[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 16, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-14383

_____

D. C. Docket No. 01-00635 CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JOHN WILLIAM CLARK,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 16, 2003)**

Before BARKETT, MARCUS and ALARCÓN*, Circuit Judges.

ALARCÓN, Circuit Judge:

The Government has appealed from the district court's order granting John

_____

*Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

William Clark's motion to suppress a firearm discovered after he and two associates were detained and ordered to reenter an automobile as a means of protecting a law-enforcement officer's safety. We must decide whether a law-enforcement officer may briefly detain and order a passenger to reenter an automobile to protect the officer's safety while the officer investigates a crime committed in his presence by two associates of the passenger.

The district court granted the motion to suppress holding that the detention of the passenger was unreasonable under the Fourth Amendment because the officer did not observe Mr. Clark engaging in any suspicious criminal activity. We reverse and remand because we conclude that it was reasonable for the officer to direct that the combatants and their associate return to the vehicle in order to ensure his safety while he conducted a criminal investigation.

I

On April 12, 2000, Officer Franklin Huff was patrolling alone in a marked Atlanta Police Department vehicle at around 9:30 or 9:45 p.m. He was wearing a police uniform. In front of the MARTA train station on Ashly Street, he observed two men fighting or wrestling in the middle of the street. An automobile was stopped on the wrong side of the street with its lights on and with one door open. The engine was running. Officer Huff had patrolled that area for approximately

2

four years. During that time he had received a "lot of calls involving violence" in that area.

Officer Huff activated his patrol car's blue lights, alighted from his vehicle and ordered the two men to stop fighting. Officer Huff observed Mr. Clark standing on the sidewalk watching the fight. Mr. Clark was not engaged in any criminal activity.

Mr. Clark testified at the suppression hearing that he had been a passenger in the vehicle observed by Officer Huff. Mr. Clark stated that he had alighted from the vehicle "[b]ecause the other two individuals that were in the car were wrestling." When Officer Huff arrived, Mr. Clark testified that he was "trying to stop them from fighting."

Officer Huff asked the three men if the vehicle belonged to one of them. One of the combatants replied that it was his car. Officer Huff asked the other two men whether they had been passengers in the car. Mr. Clark admitted that he had been a passenger.

Officer Huff ordered all three men to reenter the vehicle and told them to sit where they had previously been sitting and to keep their hands where he could see them. The three men did so without resistance. Mr. Clark seated himself in the front passenger seat.

3

Officer Huff testified that he ordered the three men to get into the automobile to gain control of the situation for his own safety because he was by himself, confronted by three men, at night, in an area of the city where he had responded to a "lot of calls involving violence." Officer Huff testified that he ordered Mr. Clark to reenter the vehicle because he was "part of the scene."

In order to conduct an investigation to determine why the two men appeared to be engaged in a fight, Officer Huff ordered the driver to alight from the automobile. Officer Huff placed handcuffs on the driver and directed him to sit on the curb. He next asked the passenger in the back seat to alight from the vehicle. At this time Officer J. L. Bilak of the Atlanta Police Department arrived at the scene to back up Officer Huff. Officer Bilak testified that he saw Mr. Clark "fumbling around under the seat." Officer Bilak ordered Mr. Clark to put his hands back on the dashboard. When Officer Huff opened the passenger door to remove Mr. Clark from the vehicle, an Uzi America, Model Eagle, .40 caliber semi-automatic assault weapon fell onto the street. One of the officers seized the weapon. Mr. Clark was placed under arrest. In searching the inside of the vehicle, the officers found a weapon under the front seat and another in the back seat area.

Mr. Clark was indicted on September 4, 2001 for being a felon knowingly possessing an Uzi America, Model Eagle, .40 caliber semi-automatic assault

4

weapon in violation of 18 U.S.C. §§ 922(g) and (v). Mr. Clark was arraigned on September 10, 2001. His case was assigned to Magistrate Judge E. Clayton Scofield, III for pretrial proceedings and to Judge Marvin H. Shoob for trial.

On September 20, 2001, Mr. Clark filed a motion styled as a "preliminary motion to suppress" in which it was alleged that Mr. Clark was subject to an illegal search without a validly issued warrant. He requested that the fruits of the search be suppressed. On October 5, 2001, Mr. Clark filed a motion styled as a "particularized motion to suppress." Mr. Clark alleged that his motion to suppress the seized weapon should be granted because "the officers lacked a reasonable articulable suspicion to justify the investigatory detention of Defendant Clark."

In its response to the motion, the Government argued that Mr. Clark was not seized or detained within the meaning of the Fourth Amendment when he was asked to reenter the vehicle and sit in the same seat he occupied before he alighted. Alternatively, the Government maintained that an officer may detain the passenger of a vehicle if an officer has a reasonable suspicion that the driver of an automobile has committed a traffic violation.

On January 29, 2002, Judge Scofield submitted his report and recommendation to the district court. Judge Scofield recommended that the motion be denied because the .40-caliber hand gun would have inevitably been

5

discovered by the police in searching the vehicle incident to the arrest of the driver for disorderly conduct. Judge Scofield concluded that it was unnecessary to decide whether Mr. Clark had been detained, or whether the officers had reasonable grounds to do so.

On April 19, 2002, the district court rejected the recommendation holding that the doctrine of inevitable discovery was inapplicable because Officer Huff "did not make the decision to arrest any of the men until the gun fell out of the car." The district court referred the matter back to Judge Scofield to consider the issues raised by the parties regarding the legality of the detention of Mr. Clark.

On April 25, 2002, Judge Scofield filed a new report in which he recommended that the motion to suppress be granted. Judge Scofield found that Mr. Clark had been detained unlawfully because Officer Huff "had no reason to believe that [Mr. Clark] was engaged in any unlawful act or criminal activity, nor were any circumstances shown that would have otherwise justified detaining him and making him return to the vehicle." Judge Scofield cited Terry v. Ohio, 392 U.S. 1 (1968), and Illinois v. Wardlaw, 528 U.S. 119 (2000), to support his conclusion that the evidence should be suppressed.

In its objection to Judge Scofield's April 25, 2002, report and recommendation, the Government argued that the detention of a passenger during

a traffic stop is lawful pursuant to <u>Pennsylvania v. Mimms</u>, 434 U.S. 106 (1977). The Government contended that it is constitutionally permissible to detain a passenger who is not suspected of wrongdoing in order to protect an officer from the possibility that the passenger will assist the driver in attempting to escape or in attacking the officer.

The district court adopted Judge Scofield's recommendation on July 8, 2002. The district court rejected the Government's contention that Mr. Clark had not been detained. The district court reasoned as follows:

> [T]he Court concludes that the detention was unlawful. The government contends that the detention was lawful because Officer Huff was entitled to gain control over a potentially dangerous situation. The Court concludes that this contention is without merit because Officer Huff had no reason to believe that defendant was involved in any criminal activity. Consequently, Officer Huff was not justified in detaining defendant. Therefore, because the evidence at issue was discovered as the result of an unlawful detention, the Court grants defendant's motion to suppress.

The court did not cite any authority to support its rejection of the Government's argument that an officer may briefly detain a person to gain control over a potentially dangerous situation that might threaten the officer's safety.

The Government has filed a timely notice of appeal. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over an

7

interlocutory appeal by the United States from an order granting a motion to suppress or exclude evidence under 18 U.S.C. § 3731.

II

The Government seeks reversal of the order suppressing the .40 caliber semi-automatic assault weapon. It avers that the district court erred in concluding that the detention of Mr. Clark was unlawful because Officer Huff had no reason to believe that Mr. Clark was involved in any criminal activity. The Government argues that the detention of Mr. Clark was lawful to protect Officer Huff's safety while he conducted an investigation of reasonably suspicious violent conduct that occurred in his presence.[1] We agree.

"Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts *de novo*." United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000) (citing United States v. Magluta, 44 F.3d 1530, 1536 (11th Cir. 1995)).

The question whether an officer who is conducting a criminal investigation based on a reasonable suspicion that a driver has committed a crime may order a

_____

[1]In its opening brief, the Government conceded that Mr. Clark was detained. The record supports this concession. A person is detained or seized "[w]henever a police officer accosts an individual and restrains his freedom to walk away . . ." Terry v. Ohio, 392 U.S. 1, 16 (1968).

passenger to reenter a vehicle to protect the officer's safety has not been addressed by the Supreme Court. In <u>Maryland v. Wilson</u>, 519 U.S. 408 (1997), the Court held that an officer may order a passenger <u>out</u> of a vehicle during a stop for a traffic infraction without violating the Fourth Amendment although there is no articulable reason to detain the passenger. <u>See</u> <u>id.</u> at 413. The Court reasoned as follows:

> [D]anger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order the passengers to get out of the car pending completion of the stop.

<u>Id.</u> at 414-15 (footnote omitted). The Court explained that passengers pose as great a danger to police officers as do drivers during traffic stops because

> the possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop. And the motivation of a passenger to employ violence to prevent apprehension of such a crime is every bit as great as that of the driver.

<u>Id.</u> at 414. The Court's approval in <u>Maryland v. Wilson</u> of officer control of passengers in a traffic stop stems from the "legitimate and weighty" need for

9

officer safety.  See Pennsylvania v. Mimms, 434 U.S. at 110 (stating that in traffic stops "the safety of the officer – is both legitimate and weighty").

In Maryland v. Wilson, the Court analogized to Michigan v. Summers, 452 U.S. 692 (1981), in concluding that the interest in officer safety outweighs the liberty interest of a passenger who is not suspected of violating the law.  Maryland v. Wilson, 519 U.S. at 414-15.  In Michigan v. Summers, the police obtained a warrant to search for contraband in a residence.  452 U.S. at 693.  When the police arrived to execute the warrant, they observed Summers come out the front door and proceed down the steps.  Id.  The Court assumed that the pre-arrest seizure of Summers was unsupported by probable cause.  Id. at 696.  In upholding the detention and the order that Summers reenter the residence and remain there while the officers searched the residence, the Court stated:

> Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence.  The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.

Id. at 702-03 (footnote omitted) (emphasis added) (citing 2 W. LaFave, Search and Seizure § 4.9, pp. 150-51 (1978)).

In Atwater v. City of Lago Vista, 532 U.S. 318 (2001), the Supreme Court

10

instructed that

> a responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations of government need, lest every discretionary judgment in the field be converted into an occasion for constitutional review. See, e.g., United States v. Robinson, 414 U.S. 218, 234-35 (1973). Often enough, the Fourth Amendment has to be applied on the spur (and in the heat) of the moment, and the object in implementing its command of reasonableness is to draw standards sufficiently clear and simple to be applied with a fair prospect of surviving judicial second-guessing months and years after an arrest or search is made.

Id. at 347.

In determining whether an officer has conducted a reasonable search and seizure, "the essence of all that has been written is that the totality of the circumstances – the whole picture – must be taken into account." United States v. Cortez, 449 U.S. 411, 417 (1981). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Cortez, 449 U.S. at 418) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

In Hudson v. Hall, 231 F.3d 1289 (11th Cir. 2000), an action filed pursuant

11

to 28 U.S.C. § 1983, we observed: "As the Supreme Court has recognized, <u>a police officer performing his lawful duties may direct and control – to some extent – the movements and location of persons nearby, even persons that the officer may have no reason to suspect of wrongdoing.</u>" <u>Id.</u> at 1297 (emphasis added) (citing <u>Maryland v. Wilson</u>, 519 U.S. at 415; <u>Michigan v. Summers</u>, 452 U.S. at 702-03).

The District of Columbia Circuit and the Third Circuit have each relied on <u>Maryland v. Wilson</u> in holding that a police officer may detain a passenger, who is not suspected of wrongdoing, during a lawful traffic stop. In <u>Rogala v. District of Columbia</u>, 161 F.3d 44 (D.C. Cir. 1998), a police officer ordered a passenger to return to the car while he investigated the driver. <u>Id.</u> at 52-53. In upholding the reasonableness of the detention, the court held "that in the circumstances presented, it follows from <u>Wilson v. Maryland</u> that a police officer has the power to reasonably control the situation by requiring a passenger to remain *in* a vehicle during a traffic stop, particularly where, as here, the officer is alone and feels threatened." <u>Id.</u> at 53 (emphasis in original) (citing <u>United States v. Moorefield</u>, 111 F.3d 10, 12-13 (3rd Cir. 1997); <u>United States v. White</u>, 648 F.2d 29, 37 (D.C. Cir. 1981)).

In <u>Moorefield</u>, the Third Circuit held that it was constitutionally permissible for officers to order a passenger who was not suspected of criminal activity "to

remain in the car with his hands in the air." Id. 111 F.3d at 13. The Third Circuit reasoned as follows:

> Just as the Court in Wilson found ordering a passenger out of the car to be a minimal intrusion on personal liberty, we find the imposition of having to remain in the car with raised hands equally minimal. We conclude that the benefit of added officer protection far outweighs this minor intrusion.

Id. (emphasis added).

### III

We must now examine the conduct of Officer Huff to determine whether his brief detention of Mr. Clark was reasonable in light of existing Fourth Amendment jurisprudence discussed above. The district court correctly concluded that Officer Huff did not observe Mr. Clark engage in any criminal activity. The district court failed to consider, however, if the detention of Mr. Clark was reasonable under the totality of the circumstances confronting Officer Huff.

One. Officer Huff observed a violent confrontation between two men fighting in the street.

Two. The combatants were next to an automobile that was on the wrong side of the street.

Three. The door to the vehicle was open, the engine was running, and the

13

lights were on.

Four.  Officer Huff had responded to numerous reports of violence in that vicinity.

Five.  Mr. Clark informed Officer Huff that he had been a passenger in the automobile.

Six.  Officer Huff was alone at night facing three men who were associates.

This court has ruled that "an individual's proximity to illegal activity may [] be considered" when determining whether there were reasonable grounds to justify a detention.  United States v. Hunter, 291 F.3d 1302, 1306 (11th Cir. 2002) (citing United States v. Brown, 159 F.3d 147, 150 (3d Cir. 1998)).

The Supreme Court has recognized that street encounters put officers in danger.  See  Pennsylvania v. Mimms, 434 U.S. at 110 ("Indeed, it appears 'that a significant percentage of murders of police officers occurs when the officers are making traffic stops.'" (quoting United States v. Robinson, 414 U.S. at 234 n.5).  Although Mr. Clark had alighted from the automobile in which he had been a passenger before Officer Huff arrived on the scene, his admitted relationship to the parties whom Officer Huff was investigating made him "every bit as great" a danger as the combatants.  Maryland v. Wilson, 519 U.S. at 414.

As noted above, in Michigan v. Summers, 452 U.S. at 702-03, the Supreme

14

Court held that the "risk of harm" to officers is "minimized" when police officers "exercise unquestioned command of the situation." Id. In Hudson v. Hall, 231 F.3d at 1297, this court reasoned that an officer may "control" persons not suspected of wrongdoing if they are near a street encounter with persons reasonably suspected of criminal activity. The need for an officer to take command and control persons during a criminal investigation is "particularly [true] where . . . the officer is alone and feels threatened." Rogala v. District of Columbia, 161 F.3d at 53.

While acting alone, Officer Huff observed two men engaged in violent criminal conduct. Officer Huff testified that Mr. Clark informed him that Mr. Clark was a passenger in the vehicle that was next to the two men who were fighting. He testified that he detained Mr. Clark and the other persons in order to control the situation to protect his safety. Under the circumstances presented by this case, Mr. Clark's liberty interest was outweighed by the necessity for Officer Huff to control the movement of the three associates and to detain them briefly to ensure his safety while he conducted a criminal investigation. We conclude that Officer Huff did not violate the Fourth Amendment in briefly detaining Mr. Clark after learning that he was not a mere bystander but, instead and notably, had been a passenger in the automobile and an associate of two persons being investigated

for criminal activities.

In reaching this conclusion, we observe that this is not a case where a law enforcement officer detained an individual who was in no way associated with any criminal wrongdoing, but rather was simply an unrelated bystander to a traffic violation or to an altercation between other persons. We have no occasion to address the constitutionality of detaining an unrelated bystander. Rather, as we have already noted, the ultimate touchstone of our Fourth Amendment analysis is the objective reasonableness of Officer Huff's particular actions, and we are satisfied that his brief detention of Mr. Clark stemmed from, and was an altogether reasonable response to, his justifiable concern for his own safety, and accordingly did not violate the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 396 (1989) ("'[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' [and accordingly] its proper application requires careful attention to the facts and circumstances of each particular case . . . ." (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979))).

We VACATE the order granting Mr. Clark's motion to suppress. We REMAND for further proceedings regarding the merits of the indictment.