*1310 WILSON, Circuit Judge,
dissenting:
I agree with the majority that the district court erroneously considered information unavailable to the officers at the time of the stop at issue. Furthermore, I do not dispute that the officers had reasonable suspicion to detain McRae to investigate whether he illegally possessed a concealed weapon in violation of Florida law. I do not, however, join the majority in finding that the stop of Lewis was proper.
For purposes of the Fourth Amendment, we proceed against the background that “[a] search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing.” City of Indianapolis v. Edmond, 531 U.S. 32, 37, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) (emphasis added). Consistent with this general requirement, the Supreme Court has “recognized only limited circumstances in which the usual rule does not apply.” Id. Those exceptions are justified for situations in which the public interest outweighs “ ‘the individual’s right to personal security free from arbitrary interference by law officers.’ ” Maryland v. Wilson, 519 U.S. 408, 411, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (quoting Pennsylvania v. Mimms, 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam)). However, none of those exceptions apply here,[1] and the “reasonableness” inquiry does not justify ignoring the reasonable suspicion requirement in situations where officers claim a generalized concern for safety.[2]
Although the majority holds that this stop was reasonable under the circumstances, it does so without meaningfully balancing the competing public and private interests at issue. In ignoring this balance, the majority has essentially found that a broad assertion of officer safety necessarily trumps the private right of individual liberty and therefore justifies a warrantless stop. I emphasize that I fully appreciate the high value we place on officer safety, which typically leads us to defer to an experienced officer’s judgment about how to control the scene of an investigation. However, I am not aware of any court that has held that concerns for officer safety justify every intrusion on individual liberty. See Edmond, 531 U.S. at 42, 121 S.Ct. 447 (“[T]he gravity of the threat alone cannot be dispositive of questions concerning what means law enforcement officers may employ to pursue a given purpose.”).
To the contrary, Lewis had a weighty interest in his own personal liberty at the *1311 time of the stop equivalent to that of any other individual detained in an on-the-street encounter under Terry. And we have recognized that the Supreme Court long ago established the appropriate balance between the public and private interests that permits a stop in this context: the existence of reasonable suspicion based on “specific and articulable facts.” See United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir.1990) (“In justifying [a Terry stop], the ‘reasonableness’ standard requires that a police officer ‘be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.’ ” (quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968))). I do not find that reasonable suspicion justified Lewis’s detention.
I
In lieu of conducting its own balance of the interests, the majority mistakenly analogizes the stop of Lewis to the limited control that an officer can exercise over the passenger of a vehicle whose driver is under investigation for illegal activity. In the cases cited by the majority, the prolonged detentions were deemed reasonable because of the preexisting restriction on the passenger’s liberty. I do not read the combination of Wilson, Hudson, and Clark to establish a broad officer-safety exception to the requirement of reasonable suspicion; I understand these cases to support a common-sense principle that, because a vehicle’s passengers are seized once their driver has been detained — that is, they have no real alternative but to await the conclusion of the investigation— an officer’s direction of their movement is not sufficiently burdensome to violate the passengers’ Fourth Amendment rights. See Arizona v. Johnson, 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009) (“For the duration of a traffic stop, ... a police officer effectively seizes ‘everyone in the vehicle,’ the driver and all passengers.” (quoting Brendlin v. California, 551 U.S. 249, 255, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007))).
In Maryland v. Wilson, the Court found it reasonable for an officer to order a passenger out of a stopped vehicle, even when no reasonable suspicion existed that the passenger was involved in any unlawful conduct. See 519 U.S. at 414-15, 117 S.Ct. 882. This holding was based on the reality that the passengers were already detained “by virtue of the stop of the vehicle.” Id. at 414, 117 S.Ct. 882. In evaluating reasonableness, the Court explained that the additional intrusion on the passenger in light of this preexisting detention was “minimal” and, therefore, outweighed by the government’s heavy interest in the safety of its officers. Id. at 413, 415, 117 S.Ct. 882. In other words, because the detention of the vehicle prevented the passenger from leaving, it was reasonable to direct the passenger to a location where he would not pose a risk to the officer during the ensuing investigation.
Similarly, in Hudson v. Hall, 231 F.3d 1289 (11th Cir.2000), we analyzed the appropriateness of an officer’s behavior in directing car passengers after a valid underlying vehicle stop. There, we seized upon Wilson to explain that “a police officer performing his lawful duties may direct and control — to some extent — the movements and location of persons nearby, even persons that the officer may have no reason to suspect of wrongdoing.” Id. at 1297. Again, the officer in Hudson exerted control of the situation only after the vehicle had been pulled over, thereby detaining the driver and all passengers. See id. at 1295-96. Thus, like in Wilson, any additional intrusion on Hudson was negligible in light of the preexisting, justified detainment of the vehicle and its passengers. And, in Hudson, the officer actually offered to allow the passenger to walk *1312 away from the scene, id. at 1292, which is precisely what Lewis was prevented from doing here.
For similar reasons, the majority’s analogy to United States v. Clark, 337 F.3d 1282 (11th Cir.2003), is misplaced. The issue confronted in Clark was “whether a law-enforcement officer may briefly detain and order a passenger to reenter an automobile to protect the officer’s safety while the officer investigates a crime committed in his presence by two associates of the passenger.” Id. at 1282.[3] Essentially, the court faced Wilson in reverse, as the officer ordered a car’s occupants to re-enter (rather than exit) the vehicle pending investigation of the driver’s observed illegal conduct. Id. at 1283. Here again, when the officer seized the vehicle’s driver, Clark was temporarily incapable of leaving that specific situation by reason of investigation of the driver. Consistent with Wilson and Hudson, the officer could reasonably direct Clark back inside the car because the intrusion on his personal liberty was minimal — he admittedly arrived in that vehicle and would presumably be leaving in it as well. See id. (recalling the fact that the officer directed Clark’s movement only after being advised that Clark had been a passenger in the vehicle).
Also significant in Clark was the credible threat of violence facing the officer, which bore on the reasonableness of the detainment. The officer in Clark approached a situation in which he plainly observed violence and other illegal activity. Id. at 1287 (noting the totality of the circumstances, which included observation of a physical confrontation and an illegally parked car on the street). And he confronted this violent situation alone. Id. Far from that scenario, the two officers who stopped Lewis here could not identify any behavior to suggest that any of the four men ultimately detained were committing any violent crimes or planned to do anything but cooperate.
In sum, the intrusion on Lewis’s personal liberty far exceeded the de minimis detention held reasonable in Wilson, Hudson, and Clark. Because Lewis was not “already stopped” as a result of the consensual encounter with police, see Wilson, 519 U.S. at 414, 117 S.Ct. 882, this court is obligated to analyze whether reasonable suspicion justified detention of Lewis, see Tapia, 912 F.2d at 1370.
II
In an “on-the-street encounter,” a Terry stop is lawful “when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense.” Johnson, 555 U.S. at 326, 129 S.Ct. 781 (emphasis added). Florida law does not appear to criminalize the act of standing in close proximity to an individual who carries a concealed weapon.[4] The proper inquiry thus becomes *1313 whether reasonable suspicion that one individual in a group unlawfully possesses a concealed weapon can be imputed to another member of the group who has exercised his right not to engage police in a consensual encounter. My sense is that it cannot.
As the majority recounts, the officers approached Lewis and his three companions and engaged them in a valid, consensual encounter. See United States v. Jordan, 635 F.3d 1181, 1186 (11th Cir.2011), cert. denied, — U.S. -, 132 S.Ct. 356, 181 L.Ed.2d 225 (2011). At that point, Lewis and the others could have ignored the police entirely and continued conducting their lawful business in the parking lot.[5] See Florida v. Royer, 460 U.S. 491, 497-98, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion). The only intervening fact between the consensual encounter and the stop of Lewis was the voluntary, affirmative responses of Evans and McRae when asked whether any person in the group possessed a firearm. The suspected possession offenses on behalf of other persons, however, did not implicate Lewis in the commission of any crime, and it therefore could not serve as a basis to draw weapons on the entire group otherwise lawfully present in the parking lot.
We have previously held that illegal activity combined with suspicion that a suspect carries a concealed weapon provides reasonable suspicion to justify a Terry stop to search for weapons. See United States v. Hunter, 291 F.3d 1302, 1307 (11th Cir.2002). We have similarly held that “[a] person’s proximity to a person whom officers have probable cause to believe is committing a crime may be considered as a factor in assessing reasonable suspicion.” United States v. Gonzalez, 70 F.3d 1236, 1238 (11th Cir.1995) (per curiam) (emphasis added).[6] We have never, though, extended this reasoning to impute an officer’s reasonable suspicion of one individual to an associate who is in the vicinity and engaged in purely lawful activity. See United States v. Afanador, 567 F.2d 1325, 1331 (5th Cir.1978) (“Lest there be any doubt, we state here that ‘reasonable suspicion’ must be specifically directed to the person to be searched .... [T]he [Fjourth [Ajmendment does not permit any automatic or casual transference of ‘suspicion.’ ”). And there is good reason for this court not to do so, as the piggybacking of reasonable suspicion, especially in a circumstance where the possible offense is of singular possession, is too attenuated to pass muster under the Fourth Amendment. See United States v. Lindsey, 482 F.3d 1285, 1290 (11th Cir.2007) (“ ‘[Reasonable suspicion’ must be more than ‘an inchoate and unparticularized suspicion or hunch.’ ” (quoting United States v. Powell, 222 F.3d 913, 917 (11th Cir.2000))).
As the district court explained, “the deputies specifically testified that they did not have any evidence that [Lewis] had participated in a robbery or had been selling drugs or was in any other way engaged in or about to be engaged in the commission of a crime.” Dist. Ct. Order at 10. The only “specific and articulable” facts the Government offers to establish reasonable *1314 suspicion involve Lewis’s conduct after the police officers had effectuated the stop. The district court found that after the police drew their guns, Lewis was nervously looking about.[7] Furtive behavior occurring after the stop, however, cannot retroactively justify the stop for which the officers otherwise had no indicia of illegal activity. See United States v. Cruz, 909 F.2d 422, 424 (11th Cir.1989) (per curiam) (explaining that we consider the “totality of the circumstances as they existed at the time of the stop”).
Based on the circumstances, precedent provides that the appropriate scope of the detention here would have been a pat down of the armed individuals to ensure the safety of the officers. See Hunter, 291 F.3d at 1307 (“An officer who has a reasonable suspicion that an individual is engaged in illegal activity and is armed with a concealed weapon is justified in conducting a limited search for weapons.” (emphasis added)).[8] The officers would likewise act reasonably if they were to ask the two men not suspected of any illegal activity to walk a safe distance away from the scene. See Hudson, 231 F.3d at 1292. And any escalation of the situation would justify appropriate measures to respond to evolving circumstances. However, the response here, in light of the actual facts and not a scenario the majority conceives, exceeded the valid scope of a stop under Terry, which permits an officer “for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of’ persons deemed “armed and presently dangerous” in order to “discover weapons which might be used to assault him.” 392 U.S. at 30, 88 S.Ct. 1868. No case law from this circuit has interpreted Terry to permit more intrusive detentions than a pat down for weapons of those reasonably suspected of criminal activity, and the majority’s unsupported criticism of this established principle contravenes precedent without explanation.
As a result of the foregoing, I do not find the broad “reasonableness” standard, or the cases cited by the majority, to be instructive to the proper resolution of this case. Nor can I identify any “specific and articulable facts” that would give rise to the inference that Lewis was engaged in criminal activity. Because the officers had no legal justification for their course of behavior, I would affirm the district court’s *1315 order suppressing the firearm at issue here.

. For example, the Court has approved of suspicionless seizures in the context of certain police checkpoints, see, e.g., Mich. Dep't of State Police v. Sitz, 496 U.S. 444, 453-55, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990); United States v. Martinez-Fuerte, 428 U.S. 543, 566-67, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), but those cases have rightfully not been proffered as an appropriate parallel to the detention at issue here.

. The district court conducted an extensive evidentiary hearing and considered "all relevant findings” and "evidence of record” in its order suppressing the firearm. Dist. Ct. Order at 1. These considerations certainly included the officers’ testimony regarding the threat they perceived based on the behavior of the four men. Notably, though, the district court did not find any fact to substantiate the officers’ "hunch,” see Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that Lewis could also be carrying a firearm and therefore present a "substantial, immediate danger” to their safety. Given our obligation to review the facts and testimony in the light most favorable to Lewis, United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir.2000), we would not ordinarily credit the officers’ testimony in a manner inconsistent with the district court's order, see United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir.2002) (per curiam) (noting that, even in the absence of "detailed findings of fact,” we credit the lower court's credibility determinations that are implicit in its ruling).

. Likewise, the analysis of controlling law in Clark focused on vehicle-detention cases and did not ever imply that the officers conducted a Terry stop, which is at issue here. The majority highlights the Supreme Court’s comment in Berkemer v. McCarty that "most traffic stops resemble, in duration and atmosphere, the kind of brief detention authorized in Terry." 468 U.S. 420, 439 n. 29, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). But to say that Terry principles instruct a vehicle stop is not to imply the converse. The vehicle-seizure cases are premised on a de minimis interest in the passenger’s personal liberty, and no part of a typical Terry stop serves to similarly minimize an individual’s interest in being free from arbitrary interference by law enforcement.

. "Further, pursuant to the Second Amendment of the United States Constitution, it is not per se unlawful to possess a firearm, nor is it illegal to admit to carrying a firearm. Additionally, in the State of Florida, pursuant to Fla. Stat. § 790.01(2), it is not illegal for a person to carry a concealed weapon, provided he is also in possession of a valid state issued *1313 carrying permit, as was the case with Mr. McRae.” Dist. Ct. Order at 8.

. As the district court stated in its suppression order, testimony at the evidentiary hearing established that "the men were just standing in the Seawinds restaurant parking lot and that there was no basis for the officers to conclude that the men were involved in the commission of a robbery, drug dealing, or any other crime.” Dist. Ct. Order at 3.

. This reasoning is also consistent with the vehicular-seizure cases, where detention of the driver renders the detention of the vehicle's occupants reasonable. See Wilson, 519 U.S. at 413-14, 117 S.Ct. 882; Hudson, 231 F.3d at 1295-97; Clark, 337 F.3d at 1288.

. The district court found the following as part of the totality of the circumstances at the time of the stop: “standing by a car; looking in the trunk of a car; talking to each other in association; standing in a parking lot of a restaurant while it was open for business; [and] failing to park their cars in designated parking spaces in a crowded private parking lot.” Dist. Ct. Order at 8. Although the district court improperly considered that the two individuals possessing firearms did so lawfully, that circumstance was wholly inapplicable to Lewis, who never volunteered to the officers that he possessed a weapon.

. To undermine this well-settled legal principle, the majority, in footnote 8, divines an entirely new scenario — one far removed from the situation presented “on these facts”— where Lewis could wander about the scene of the investigation, grabbing at firearms and potentially assaulting police officers. I have neither stated nor implied that the scope of detention under Terry immunizes Lewis from all police interference for the entire duration of the investigation regardless of his behavior, and I respectfully disagree with the majority’s characterization of this point. I simply recognize that based on precedent, Teny does not permit the stop of an individual for whom the officers cannot articulate reasonable suspicion of wrongdoing. Adding the circumstances proposed by the majority leads to a result based on possibilities rather than the "totality of the circumstances as they existed at the time of the stop." Cruz, 909 F.2d at 424 (emphasis added).