**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2021
Decided August 11, 2021

*Before*

DIANE S. SYKES, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-3388

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States |
| *Plaintiff-Appellee,* | District Court for the Northern |
| | District of Illinois, Eastern Division. |
| *v.* | No. 1:17-CR-00603(1) |
| TYRONE JOHNSON, | Virginia M. Kendall, |
| *Defendant-Appellant.* | *Judge.* |

**O R D E R**

Tyrone Johnson, who conditionally pleaded guilty to possessing a firearm as a felon, appeals the denial of his motion to suppress evidence of two firearms that police found in his car. The officers found the guns after stopping their unmarked car next to Johnson's vehicle, which was parked behind another car and next to the curb. Johnson argues that, by pulling up beside him and blocking his path, the police stopped him without reasonable suspicion in violation of his Fourth Amendment rights. But because the officers made no show of authority from which a reasonable person would infer they intended to restrain Johnson—such as activating their lights and sirens,

brandishing their firearms, or surrounding his vehicle with multiple squad cars—we conclude that no seizure occurred.

Our account of the facts comes from the police officers' testimony, which the district court credited and Johnson does not dispute on appeal. While on patrol late at night in November 2016, two Chicago police officers spotted Johnson driving a silver car. Because they had received reports of shots fired earlier that day from a silver car, they followed him. After a few minutes, Johnson turned onto a one-way street, pulled over to the right, and stopped next to a fire hydrant. The officers, about a block behind in an unmarked car, did not activate their lights or siren or otherwise signal for Johnson to stop. They drove until their car was next to Johnson's; then they stopped with enough space for Johnson to leave his car from the driver's-side door. Johnson could not drive forward because his path was blocked by a car parked in front of him and the unmarked police car stopped on his left; the space behind him was empty.

The officers spoke to Johnson from inside their car. Although not in uniform, they wore vests identifying them as police officers. Johnson's car's engine remained running, and the officers never asked him to turn it off. One officer asked Johnson whether he knew he was parked by a fire hydrant and whether he had a driver's license; Johnson replied that he did not have a license. The officers then began to leave their car. Before they could approach Johnson, he fled the scene, driving his car in reverse the wrong way down the one-way street.

After a brief chase, the officers arrested Johnson, searched his car, and found two loaded guns. Johnson was charged with possessing a firearm as a convicted felon, *see* 18 U.S.C. 922(g)(1), and he moved to suppress the firearms. He raised two arguments. First, he contended that the officers seized him in an investigatory stop, *see Terry v. Ohio*, 392 U.S. 1, 19–20 (1968), when they positioned their car so that he was boxed in on three sides (by the car parked ahead of him, the police car to his left, and the curb to his right) and could not drive away without unlawfully going the wrong way on a one-way street. Johnson further argued that, because he had committed no traffic violation, the officers had no reasonable suspicion then for detaining him. He acknowledges that the Chicago Municipal Code prohibits *parking* next to a fire hydrant, but, he pointed out, the Code specifies that an occupied car is not "parked."

After a hearing, the district court denied the motion to suppress in a two-part ruling. First, it ruled that Johnson's initial interaction with the officers (after they pulled up but before he told them that he had no driver's license), was consensual and thus did

not violate Johnson's Fourth Amendment rights. Because the officers did not activate their lights or siren, brandish weapons, or use force or forceful language, the court found that a reasonable person would have felt free to end the interaction. And Johnson's statement that he had no driver's license gave the officers probable cause to arrest him, rendering the rest of the encounter constitutional.

Second, the court rejected the government's alternative argument that the officers had reasonable suspicion for a *Terry* stop based on the proximity of Johnson's car to the hydrant. As Johnson had pointed out, the Chicago Municipal Code permits stopping a car by a fire hydrant if the driver remains inside (in which case the car is "standing," not "parking"); therefore, the court said, Johnson never broke the law. And to the extent the officers mistakenly believed that standing by a fire hydrant was unlawful, that mistake was unreasonable, the court concluded, and so it too was not a valid basis for a *Terry* stop. But because the initial encounter was consensual and yielded probable cause for an arrest, the court denied the motion to suppress.

Johnson entered a conditional guilty plea, preserving his right to appeal the denial of his motion to suppress. The court sentenced him to 85 months' imprisonment (a downward variance from his Guidelines range).

On appeal, Johnson contests the denial of his motion to suppress, arguing that the police conducted an unjustified *Terry* stop so the firearms found in his car should be suppressed. He repeats that the officers seized him by "boxing him in" between the police car to his left, the parked car in front, and the curb to his right. He cites cases in which this court found that the police seized suspects by positioning police cars or bicycles to block the suspects. For example, in *United States v. Burton*, 441 F.3d 509, 510–11 (7th Cir. 2006), this court ruled that a seizure occurred when three officers had positioned their bicycles in front and on either side of Burton's car while they questioned him. *See also United States v. Smith*, 794 F.3d 681, 683, 685 (7th Cir. 2015) (finding seizure where officers followed defendant into secluded alley and stopped two bicycles in front of him, obstructing his intended path forward); *United States v. Packer*, 15 F.3d 654, 656 (7th Cir. 1994) (same where police cars stopped in front of and behind defendant's car, and officer shone light through windows and instructed defendant to put hands in air); *United States v. Pavelski*, 789 F.2d 485, 488 (7th Cir. 1986) (same where police cars stopped behind, to the side, and in front of defendant's parked car). Similarly, in *United States v. Green*, 111 F.3d 515, 517, 520 n.1 (7th Cir. 1997), we ruled that the police seized the defendant, who had parked in a driveway and left his car, by

leaving their squad car to speak to him with their parked car blocking the driveway exit.

This court reviews de novo the district court's finding that the initial encounter (up to Johnson's statement that he had no license) was consensual. *United States v. Smith*, 794 F.3d 681, 683 (7th Cir. 2015). The test of whether an encounter is consensual is "whether a reasonable person in the defendant's position would feel free to decline the officers' requests or otherwise terminate the encounter"—not whether the person would feel free or even able to leave without being questioned. *Florida v. Bostick*, 501 U.S. 429, 436–37 (1991). In *Bostick*, the Court explained that even if the police question a suspect in a setting where leaving is not easy (there, a passenger was seated on a bus when the police boarded it to question him), no seizure has occurred "so long as the officers do not convey a message that compliance with their requests is required." *Id.* at 429.

The police here did not convey a message that Johnson was required to answer their questions. They arrived in plain clothes in a single unmarked car, without activating sirens or lights, displaying guns, or ordering Johnson to turn off his car or to remain inside. The lack of traditional signals of police authority and the absence of any coordinated effort among multiple police cars to confine Johnson distinguish Johnson's case from those he cites. *See Burton*, 441 F.3d at 510–11; *Smith*, 794 F.3d at 683, 685; *Packer*, 15 F.3d at 656; *Pavelski*, 789 F.2d at 488.

We recognize that in *Bostick* the suspect was confined before police arrived, while Johnson was not confined until after they appeared. But this distinction is immaterial to the message a reasonable person would think the police conveyed. A reasonable person in Johnson's position would not perceive that the police stopped their car in order to block him and compel answers; rather, the reasonable inference is that they stopped because it was the natural way to voice their public-safety concern about the blocked hydrant. This point distinguishes Johnson's case from *Green*, where the police, who presumably had other parking options, positioned their car exactly where it would block Green's exit from his driveway, 111 F.3d at 517, leading a reasonable person to perceive that they intended to compel Green to remain and speak to them.

We are therefore persuaded that the encounter was consensual, and we AFFIRM the judgment of the district court on that basis.