COMMONWEALTH of Pennsylvania,
Appellee

v.

Duran PRATT, Appellant.

Superior Court of Pennsylvania.

Argued May 1, 2007.

Filed July 20, 2007.

Andrew G. Gay, Jr., Philadelphia, for appellant.

Peter Carr, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: TODD, J., McEWEN, P.J.E., and JOHNSON, J.

OPINION BY TODD, J.:

¶ 1 Duran Pratt appeals the judgment of sentence[1] imposed by the Philadelphia County Court of Common Pleas after he was convicted of two counts of violating the Pennsylvania Uniform Firearms Act, 18 Pa.C.S.A. §§ 6101–6125. We affirm.

¶ 2 On August 5, 2005, at approximately 10:00 p.m., Philadelphia Police Officer Vincent Visco was on highway patrol in the area of 1800 West Susquehanna Avenue in Philadelphia, an area known for a high presence of drugs and guns, with his partner, Officer James Moore. The officers were in full uniform in a marked police vehicle. Officer Visco observed a white Mazda Millennium with a broken right brake light headed westbound on Susquehanna Avenue. The officers activated their lights and siren and initiated a traffic stop of the Mazda.

¶ 3 According to Officer Visco's testimony at trial, as soon as the Mazda came to a stop, Appellant, who was in the front passenger seat, exited the vehicle and began to walk away. Officer Visco stated that he twice ordered Appellant back into the vehicle before Appellant complied. Officer Visco testified that as he approached the passenger side of the vehicle, he observed Appellant reach into the front of his waistband and adjust something with his right hand. Officer Visco testified that, based on his 7½ years of experience as a police officer, he believed Appellant had a weapon and, for his and his partner's safety, that he ordered Appellant to exit the vehicle for a safety frisk.

¶ 4 Appellant exited the vehicle and placed his hands on the vehicle as directed, but then began to run. As he ran, Appellant removed and discarded from his waistband a black Kel–Tech 9–millimeter handgun, which was loaded with 11 live rounds. After he discarded the gun, Appellant continued to run. Officer Visco recovered the gun from where it had been dropped. The driver of the vehicle was Durel Pratt, Appellant's brother. Appellant eventually was arrested and charged with carrying a firearm without a license,[2] and carrying a firearm on public streets or public property.[3]

¶ 5 Prior to trial, Appellant filed a motion to suppress, which was denied by the trial court on September 15, 2005. Appellant proceeded to a bench trial on that same day, following which he was convicted of the aforementioned offenses. Appellant was sentenced to two concurrent terms of three years reporting probation; he also was ordered to pay court costs and to obtain and maintain employment. On appeal, Appellant contends that the trial court erred in denying his pretrial motion

1. Appellant purports to appeal from the September 15, 2005 order denying his pretrial motion to suppress. A direct appeal by a defendant in a criminal proceeding lies from the judgment of sentence. See *Commonwealth v. Schauffler*, 397 Pa.Super. 310, 313, 580 A.2d 314, 316 (1990). The appeal in this case falls within no recognized exception to the general rule. See *id.*

2. 18 Pa.C.S.A. § 6106.

3. 18 Pa.C.S.A. § 6108.

to suppress evidence of the firearm on the basis that, under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, the police did not have probable cause to detain Appellant by ordering him back into the vehicle which Appellant had exited once the vehicle had stopped.

¶ 6 It is well settled that

[w]hen we review the ruling of a suppression court, we must determine whether its factual findings are supported by the record. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense which is uncontradicted on the record as a whole; if there is support on the record, we are bound by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are erroneous.

*Commonwealth v. Slonaker,* 795 A.2d 397, 400 (Pa.Super.2002) (citation omitted).

¶ 7 As we explained in *Commonwealth v. Campbell,* 862 A.2d 659 (Pa.Super.2004),

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protects individuals from unreasonable searches and seizures, thereby insuring the "right of each individual to be let alone." Evidence obtained from an unreasonable search or seizure is inadmissible at trial. To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive.

The first of these [interactions] is a 'mere encounter' (or request for infor-

mation) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an 'investigative detention' must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause.

A forcible stop of a motor vehicle by a police officer constitutes a seizure of a driver and the occupants; this seizure triggers the protections of the Fourth Amendment. An officer is permitted to stop a motor vehicle to investigate a vehicle code violation which he or she observed.

*Id.* at 663 (citations omitted and alterations original).

¶ 8 Appellant does not dispute that the initial police stop of the vehicle in which he was a passenger was supported by probable cause based on Officer Visco's observation of a Motor Vehicle Code violation. Rather, Appellant contends that Officer Visco's act of ordering him to get back into the vehicle after Appellant exited the car and began to walk away constituted an independent seizure of his person requiring probable cause, which Officer Visco did not possess. Appellant further argues that even if the act of ordering him to get back into the car constituted merely an investigative detention, Officer Visco did not have the reasonable suspicion necessary to support the detention. As a result, Appellant contends evidence seized as a result of Officer's Visco's observation of Appellant adjusting something in his waistband, which occurred after Appellant re-entered the vehicle at the officer's direction, should have been suppressed as fruit of the poisonous tree.

¶ 9 In *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the United States Supreme Court held that police may require the driver of a lawfully stopped vehicle to exit the vehicle without any additional probable cause or reasonable suspicion without violating an individual's Fourth Amendment rights. In so holding, the Court balanced the need to protect police officers from the serious and substantial dangers inherent in traffic stops, and the relatively minor intrusion upon the privacy rights of the driver in situations where the vehicle has been lawfully stopped.

¶ 10 Subsequently, this Court applied the rationale of *Mimms* to allow a police officer to order passengers in a lawfully stopped vehicle to exit that vehicle where the officer has an articulable and reasonable suspicion that criminal activity may be afoot. *See Commonwealth v. Baer,* 439 Pa.Super. 437, 654 A.2d 1058 (1994); *Commonwealth v. Elliott,* 376 Pa.Super. 536, 546 A.2d 654 (1988).

¶ 11 Several years later, in *Commonwealth v. Brown,* 439 Pa.Super. 516, 654 A.2d 1096 (1995), this Court, again relying on *Mimms,* retreated from this reasonable suspicion standard and held that "police may request both drivers and their passengers to alight from a lawfully stopped car without reasonable suspicion that criminal activity is afoot." *Id.* at 528, 654 A.2d 1096, 654 A.2d at 1102. In so holding, we opined that "in all cases involving lawful traffic stops, it is not unreasonable for an officer to request that the passengers in a lawfully stopped car exit the vehicle so that the safety of the officer is, if not insured, at least better protected." *Id.* at 527 n. 5, 654 A.2d at 1102 n. 5.

¶ 12 In *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), the United States Supreme Court explicitly extended the rule of *Mimms,* as this Court had in *Brown,* stating:

> In summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.

*Id.* 117 S.Ct. at 886. Thus, following a lawful traffic stop, an officer may order both the driver and passengers of a vehicle to exit the vehicle until the traffic stop is completed, even absent a reasonable suspicion that criminal activity is afoot. Appellant does not dispute this.

■ ¶ 13 In the instant case, however, we are asked to consider as a matter of first impression in this Commonwealth whether an officer may similarly order a passenger of a lawfully stopped vehicle to remain inside or get back into the vehicle. We join the numerous other state and federal courts which have held that an officer may, in fact, do so without violating an individual's Fourth Amendment rights.

¶ 14 In *United States v. Moorefield,* 111 F.3d 10 (3d Cir.1997), the Third Circuit Court of Appeals considered whether the district court properly suppressed evidence of a firearm seized from a passenger in a vehicle that was stopped for a routine traffic stop. In his motion to suppress, Moorefield argued, *inter alia,* that police officers unlawfully ordered him and the driver to remain in the car with their hands in the air. Moorefield failed to comply, and officers observed movements which they believed were attempts to conceal a weapon or narcotics. After additional officers arrived at the scene, Moore-

field and the driver were ordered to exit the vehicle, and a pat-down search of Moorefield revealed a pistol in his waistband. The district court held that the officers acted lawfully in ordering Moorefield and the driver to remain in the vehicle with their hands in the air, but held that the pat-down was not justified.

¶ 15 The court of appeals reversed, holding that, pursuant to *Wilson, supra*, the officers lawfully ordered Moorefield to remain in the car with this hands in the air while they conducted the traffic stop, and, furthermore, that the officers were justified in conducting a pat-down search for weapons based on Moorefield's behavior, specifically, his failure to follow directions. The appeals court stated:

> In view of the Supreme Court's ruling in *Wilson*, we have no hesitancy in holding that the officers lawfully ordered Moorefield to remain in the car with his hands in the air. We follow the Court's analysis in *Wilson*. The only change in Moorefield's circumstances resulting from the order to remain in the car and put his hands in the air, was that he remained inside of the stopped car with his hands in view, rather than inside of the stopped car with his hands lowered into a passenger compartment that could potentially contain a concealed weapon. Just as the Court in *Wilson* found ordering a passenger out of the car to be a minimal intrusion on personal liberty, we find the imposition of having to remain in the car with raised hands equally minimal. We conclude that the benefit of added officer protection far outweighs this minor intrusion.

*Id.* at 13.

¶ 16 Similarly, in *Rogala v. District of Columbia*, 161 F.3d 44 (D.C.Cir.1998), the Court of Appeals for the District of Columbia concluded that a police officer did not violate a passenger's Fourth Amendment

rights when he ordered her to get back into a car in which she was a passenger while the officer administered a field sobriety test to the driver of the vehicle, which the officer had lawfully stopped based on his suspicion that the driver of the car was under the influence of alcohol. The court opined that "it follows from *Maryland v. Wilson* that a police officer has the power to reasonably control the situation by requiring a passenger to remain *in* a vehicle during a traffic stop, particularly where, as here, the officer is alone and feels threatened." 161 F.3d at 53 (emphasis original).

¶ 17 The Eleventh Circuit Court of Appeals, in *United States v. Clark*, 337 F.3d 1282 (11th Cir.2003), citing the holdings in both *Rogala, supra*, and *Moorefield, supra*, likewise concluded that an officer did not violate an individual's Fourth Amendment rights by detaining that individual who was a passenger in a vehicle that was next to two men engaged in a violent fight, so that the officer, who was acting alone, could "control the situation to protect his safety." 337 F.3d at 1288.

¶ 18 Later, in *United States v. Williams*, 419 F.3d 1029 (9th Cir.2005), the Ninth Circuit Court of Appeals likewise held that an officer could order a passenger who exited a lawfully stopped vehicle back into the vehicle. In doing so, the court acknowledged:

> Those circuits to address the issue post-*Wilson* have agreed that officers may detain passengers during a traffic stop, whether it is by ordering the passenger to remain inside the automobile or by ordering the passenger to get back into an automobile that he or she voluntarily exited. *See, e.g., Rogala v. District of Columbia*, 161 F.3d 44, 53 (D.C.Cir. 1998) (holding that a passenger ordered by police to get back onto the vehicle that she voluntarily exited was not an unreasonable seizure because "a police

officer has the power to reasonably control the situation by requiring a passenger to remain *in* a vehicle during a traffic stop") (emphasis in original); *United States v. Moorefield, [supra]*.

*Id.* at 1032. The court further explained:

When Williams attempted to exit the vehicle, the automobile had already been lawfully stopped with him inside. The officer's order to get back into the automobile merely maintained the status quo by returning the passenger to his original position as an occupant inside the car. Just as in *Wilson* and *Mimms*, little is changed upon compliance with the officer's order except the position of the passenger. At most, such an order to re-enter a car that the passenger voluntarily entered, and just exited, cannot be characterized [as] anything but a "mere inconvenience," *Terry [v. Ohio]*, 392 U.S. [1], at 17, 88 S.Ct. 1868[, 20 L.Ed.2d 889 (1968)], that we think falls far short of a "serious intrusion upon the sanctity of the person," or even a "petty indignity." *Mimms*, 434 U.S. at 111, 98 S.Ct. 330; *see also Moorefield*, 111 F.3d at 13....

Furthermore, the public concern for officer safety here is as weighty as it was in *Wilson*. We have no reason to believe, nor has Williams provided any evidence to the contrary, that traffic stops today present safer encounters for police officers than they did less than ten years ago when *Wilson* was decided. We are convinced that in this case the continuing importance of, and the public interest in, promoting officer safety outweighs the marginal intrusion on personal liberty. *Rogala*, 161 F.3d at 53; *Moorefield*, 111 F.3d at 13; *see also Mimms*, 434 U.S. at 111, 98 S.Ct. 330, 54 L.Ed.2d 331.

*Id.* at 1033.

¶ 19 Finally, the court in *Williams* opined:

Giving officers the authority to control all movement in a traffic encounter is sensibly consistent with the public interest in protecting their safety. Allowing a passenger, or passengers, to wander freely about while a lone officer conducts a traffic stop presents a dangerous situation by splitting the officer's attention between two or more individuals, and enabling the driver and/or the passenger to take advantage of a distracted officer. Balancing the competing interests does not require us to ignore real dangers to officers, especially in light of the minimal intrusion.

*Id.* at 1034 (citations omitted).

¶ 20 We are cognizant that in the cases cited above, the officer was acting alone, while in the instant case, two officers were present. However, we do not believe this distinction compels a contrary result, in that the purpose of allowing an officer to require a passenger to remain in or re-enter a vehicle is to facilitate the officer's control of the situation, which we do not find necessarily dependent on the ratio between officers and vehicle occupants. *See, e.g., United States v. Hampton*, 2007 WL 1139586 (W.D.Pa. filed April 12, 2007) (holding that Fourth Amendment rights of a passenger of a legally stopped vehicle were not violated by police officers' instruction that he remain inside the vehicle during traffic stop after passenger repeatedly tried to exit).

¶ 21 We also recognize that certain state courts have reached the opposite conclusion under circumstances similar to those present in the case *sub judice*. *See, e.g., Dennis v. Maryland*, 345 Md. 649, 693 A.2d 1150 (holding that police officer was not justified in detaining a passenger who exited and began to walk away from a lawfully stopped vehicle absent an articulated reason as to why it was necessary to

detain the passenger for the officer's safety), *cert denied,* 522 U.S. 928, 118 S.Ct. 329, 139 L.Ed.2d 255 (1997); *Walls v. State,* 714 N.E.2d 1266 (Ind.App.1999) (holding that passenger who attempts to walk away from a legal traffic stop cannot be detained absent reasonable suspicion of dangerous or criminal activity); *Wilson v. Florida,* 734 So.2d 1107 (Fla.Dist.Ct.App. 1999) (officer may not, as a matter of course, order a passenger who has exited a lawfully stopped vehicle to return to and remain in the vehicle for duration of traffic stop absent an articulable suspicion of criminal activity or a reasonable belief that the passenger poses a threat to the safety of the officer, himself, or others).

¶ 22 These decisions, however, have not consistently been followed. *See, e.g., Coffey v. Morris,* 401 F.Supp.2d 542 (W.D.Va. 2005) (refusing to follow *Dennis* and instead following the various federal courts which have applied the rationale of *Maryland v. Wilson,* including *Moorefield, Williams, Clark,* and *Rogala*); *Tawdul v. State,* 720 N.E.2d 1211 (Ind.App.2000) (declining to follow *Walls* and holding that, pursuant to *Maryland v. Wilson,* police have a limited right to order a passenger who has exited a lawfully stopped vehicle to return to the vehicle to allow officer to make an initial assessment of the situation).[4]

¶ 23 After careful consideration, this Court hereby concludes that, pursuant to *Mimms* and *Maryland v. Wilson,* a police officer may lawfully order a passenger who has exited and/or attempted to walk away from a lawfully stopped vehicle to re-enter and remain in the vehicle until the traffic stop is completed, without offending the passenger's rights under the Fourth Amendment. In reaching this conclusion, we rely on many of the factors specifically set forth by the Ninth Circuit Court of Appeals in *Williams, supra,* including the fact that the passenger had voluntarily entered the vehicle, and that an officer's order to get back into a vehicle simply maintains the status quo by returning the passenger to his original position as an occupant inside the car.

■ ¶ 24 As the same reasonable suspicion standard used in determining the propriety of an investigative detention under the Fourteenth Amendment applies to an analysis under Article 1, Section 8 of the Pennsylvania Constitution, *see Commonwealth v. Ayala,* 791 A.2d 1202, 1208 (Pa.Super.2002), we likewise hold that a police officer's instructions to a passenger of a lawfully stopped vehicle to re-enter and remain in the vehicle do not violate an individual's rights under the Article I, Section 8 of the Pennsylvania Constitution.

¶ 25 We further recognize, as did the court in *Williams,* that traffic stops today present the same, if not greater, safety concerns for police officers than they did when *Wilson* was decided, and that the public interest in promoting the safety of police officers outweighs the marginal intrusion on personal liberty. We believe that allowing police officers to control all movement in a traffic encounter, and, in particular, eliminate the possibility of a passenger, who has an obvious connection to the vehicle's driver, from distracting or otherwise interfering with an officer engaged in a traffic stop, whether by exiting the car and remaining at the scene, or attempting to leave the scene for unknown

---

4. We also note that in *Walls,* the detaining officer testified that once the passenger exited the lawfully stopped car, the officer recognized him from prior encounters, and, furthermore, that he did not know Walls to carry a weapon or be a violent person; rather, the officer testified that "he was simply suspicious of Walls walking away from the scene." 714 N.E.2d at 1267.

reasons, is a reasonable and justifiable step towards protecting their safety.[5]

■ ¶ 26 Accordingly, finding that the Appellant's rights under the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution were not violated when he was ordered by Officer Visco to get back into the lawfully stopped vehicle, we hold that the trial court did not err in denying Appellant's motion to suppress evidence of the firearm, the seizure of which was based on Officer Visco's observation of Appellant's movements after he was ordered to re-enter the vehicle.

¶ 27 Judgment of sentence **AF-FIRMED.**

¶ 28 JOHNSON, J. files Concurring Opinion.

CONCURRING OPINION BY JOHNSON, J.:

¶ 1 I agree with the result reached by the Majority. As the Majority correctly notes, the Supreme Court of the United States has held that a police officer who lawfully stops a vehicle for a traffic violation may order both the driver and any passengers to exit as a matter of course, without any degree of individualized suspicion. *See Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (*Mimms II*) (overruling our Supreme Court's decision in *Commonwealth v. Mimms,* 471 Pa. 546, 370 A.2d 1157 (1977) (*Mimms I*) and permitting an officer to order a driver out of a vehicle as a matter of course); *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (extending *Mimms II* to allow an officer to order a passenger out of a vehicle as a matter of course). This is because once a vehicle has been lawfully stopped, the public's interest in officer safety outweighs the "minimal" intrusion upon the driver's and passenger's liberty interest; thus, the United States Supreme Court concluded that the officer's order to exit is reasonable under the Fourth Amendment. *See Mimms II,* 434 U.S. at 109–110, 98 S.Ct. 330; *Wilson,* 519 U.S. at 414–15, 117 S.Ct. 882. For the reasons stated in the Opinion, I agree with the Majority that under the Fourth Amendment, the *Mimms II/Wilson* rationale can be extended to "lawfully order a passenger who has exited and/or attempted to walk away from a lawfully stopped vehicle to re-enter and remain in the vehicle until the traffic stop

---

**5.** We find Appellant's reliance on *Commonwealth v. Shiflet,* 543 Pa. 164, 670 A.2d 128 (1995), for the proposition that third-party bystanders to a traffic stop do not give up their right to be free of unreasonable searches and seizures, to be misplaced. In *Shiflet,* the appellant was a passenger in a vehicle which was stopped on suspicion that the driver was intoxicated. After the driver was arrested, one of the arresting officers offered the appellee a ride due to the fact that she did not have a driver's license. When the appellee accepted, the officer seized her purse from under her arm, and without asking for permission, began rifling through its contents, discovering a leather pouch containing marijuana and drug paraphernalia. Despite the officer's testimony at a suppression hearing that it was his customary practice to look for weapons inside the purse of any females he transport-ed, for safety purposes, our Supreme Court affirmed this Court's order reversing the trial court's denial of the suppression motion. In doing so, the Court concluded, *inter alia,* that the search of the appellee's purse was too attenuated to be incident to arrest of the driver or a third passenger who was arrested for disorderly conduct, and was unsupported by any reasonable suspicion that criminal activity was afoot or that the appellee was armed and dangerous. In the instant case, Officer Visco did not search Appellant's person; he merely ordered Appellant to re-enter the vehicle, which we conclude, as discussed above, was a reasonable extension of the Supreme Court's holding in *Maryland v. Wilson* that a police officer may order a passenger to exit a vehicle *even absent a reasonable suspicion that criminal activity is afoot.*

is completed[.]" Majority Opinion at 567. I write separately, however, to express my concerns that this extension of the *Mimms II/Wilson* rationale on state constitutional grounds may be incompatible with the notions of enhanced privacy embodied in Article I, Section 8 of the Pennsylvania Constitution. *See* Majority Opinion at 567 ("[W]e likewise hold that a police officer's instructions to a passenger of a lawfully stopped vehicle to re-enter and remain in the vehicle do not violate the individual's rights under Article I, Section 8 of the Pennsylvania Constitution.").

¶ 2 The relevant facts of this case are as follows. On August 5, 2004, at approximately 10:05 p.m., police officers Vincent Visco and James Moore observed a white Mazda Millenia traveling on Susquehanna Avenue without an operational right brake light. Notes of Testimony (N.T.), 9/15/05, at 6. The officers activated the patrol car's sirens and stopped the vehicle in what Officer Visco described as a "high crime" area. N.T., 9/15/05, at 6. Duran Pratt, a front seat passenger in the Mazda, immediately exited the vehicle and began to walk towards a corner deli. N.T., 9/15/05, at 6, 8, 12–13. Officer Visco exited the patrol car and ordered Pratt to return to the Mazda, but Pratt continued to walk towards the deli. N.T., 9/15/05, at 6, 16. Officer Visco again commanded Pratt to return to the Mazda, whereupon Pratt turned around, returned to the Mazda, sat in the passenger seat and closed the door. N.T., 9/15/05, at 6, 16–17. During this time, Officer Visco did not observe anything suspicious about Pratt's behavior and testified that even though Pratt exited the vehicle, "[i]t's not a crime." N.T., 9/15/05, at 15.

¶ 3 When Pratt was seated inside the Mazda, Officer Visco shined a flashlight into the passenger seat and noticed that Pratt's right hand was reaching into the front of his waistband area. N.T., 9/15/05, at 6–7. Believing Pratt to be armed, Officer Visco ordered him out of the car so he could conduct a safety frisk. N.T., 9/15/05, at 7. Pratt exited the vehicle, put his hands on the car, and then decided to flee. N.T., 9/15/05, at 6. As Pratt ran away, he removed a Kel–Tech nine millimeter hand gun from his waistband and discarded it onto the street. N.T., 9/15/05, at 7. The police eventually arrested Pratt, and in a non-jury trial, the trial court convicted him of carrying a firearm without a license and carrying a firearm on a public street in Philadelphia. *See* 18 Pa.C.S. §§ 6106, 6108 (respectively). On appeal, Pratt contends that the trial court erred in failing to suppress the handgun, because Officer Visco unlawfully detained him—in the absence of probable cause or reasonable suspicion—when ordering him to re-enter and remain inside the vehicle. Brief for Appellant at 11–20.

¶ 4 On a variety of occasions, our Supreme Court has held that Article I, Section 8 affords greater protection than the Fourth Amendment. *See Jones v. City of Philadelphia*, 890 A.2d 1188, 1194–99 (Pa. Cmwlth.2006). In *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), our Supreme Court explained that:

here in Pennsylvania, we have stated with increasing frequency that it is both important and necessary that we undertake an independent analysis of the Pennsylvania Constitution each time a provision of that fundamental document is implicated. Although we may accord weight to federal decisions where they are found to be logically persuasive and well reasoned, paying due regard to precedent and the policies underlying specific constitutional guarantees, we are free to reject the conclusions of the United States Supreme Court so long as we remain faithful to the minimum guar-

antees established by the United States Constitution.

586 A.2d at 894–95. The litigants and courts of this Commonwealth are instructed to consider the following four factors when deciding whether the Pennsylvania Constitution affords greater protection than the Federal Constitution:

> 1) text of the Pennsylvania constitutional provision;
>
> 2) history of the provision, including Pennsylvania case-law;
>
> 3) related case-law from other states;
>
> 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

*Id.* at 895. After my review of the *Edmunds* factors, I conclude that Article I, Section 8 can be interpreted to compel a police officer to articulate some sort of objective facts that a passenger is involved in criminal activity or poses a threat to the safety of the officer, in order to command that passenger to re-enter and remain inside a vehicle that the passenger voluntarily exited.

¶ 5 When examining the text of Article I, Section 8, our Supreme Court has repeatedly stated that the provision embodies a strong notion of privacy and has held that the section often provides greater protection than the Fourth Amendment, "since the core of its exclusionary rule is grounded in the protection of privacy while the federal exclusionary rule is grounded in deterring police misconduct." *Commonwealth v. Williams,* 547 Pa. 577, 692 A.2d 1031, 1038 (1997). In *Commonwealth v. Pollard,* 450 Pa. 138, 299 A.2d 233 (1973), a case rendered prior to *Mimms II* and *Wilson,* our Supreme Court held that a police officer may not order a *passenger* out of a car in the absence of an articulated belief that criminal activity is afoot or that the passenger posed a danger to someone's safety. *See id.* at 235–36. In that case, the police stopped a vehicle that ran through a red light. *See id.* at 234. While one officer conversed with the driver, the other officer went to the passenger's side and ordered the passengers in the front and back seat out of the car for his "own protection" and because the vehicle had been stopped in a "high crime area." *See id.* at 234–35. As the appellant was alighting from the car, he dropped a white packet that appeared to contain an illegal substance and was subsequently placed under arrest. *See id.* at 234. In finding the drugs inadmissible as the by-product of an unlawful seizure, the Court highlighted the privacy rights of the passenger and emphasized the requirement necessary for an investigative detention:

> The issue is whether in the case at bar 'appropriate circumstances' justify the officer's actions. Nothing connects the defendant with the defective car except that he was a passenger in it. The officer did not testify that at the time he requested him to get out of the car he had any suspicion that defendant had committed any crime. His 'curiosity' in that regard was aroused later. In any event[,] curiosity does not equate with reasonable suspicion. The record discloses nothing to indicate that the officer, when he ordered defendant out of the car, had any reason to believe that there was any danger to anyone's safety.

*Id.* at 236 n. 3. The Court, accordingly, found the seizure unconstitutional under the Fourth Amendment and suppressed the abandoned drugs. *See id.* at 236. *See also Mimms I,* 370 A.2d at 1160 (relying on *Pollard,* our Supreme Court stated: "We are not unsympathetic to the plight of the police officer who must approach potentially dangerous people in the daily enforcement of our traffic laws. The Fourth Amendment, however, mandates that inva-

sions of the personal liberties of the occupants of motor vehicles be justified by a reasonable appraisal of the objective facts of the given situation.").

¶ 6 In the post-*Mimms II* and pre-*Wilson* era of our jurisprudence, this Court, following in the dictates of *Pollard,* required a police officer to possess an articulable suspicion that his/her safety is in jeopardy or that criminal activity is afoot when commanding a passenger to exit a vehicle. *See, e.g., Commonwealth v. Baer,* 439 Pa.Super. 437, 654 A.2d 1058, 1062 (1994) ("[W]e hold today that after a valid traffic stop, a police officer may order a ... passenger from a vehicle when the officer reasonably believes that criminal activity is afoot or fears for his safety."); *Commonwealth v. Robinson,* 399 Pa.Super. 199, 582 A.2d 14, 16 (1990) (distinguishing *Pollard* factually and reiterating that "where there is a reasonable suspicion of criminal activity *or* of a passenger's being armed and dangerous, a police officer may order a passenger to alight from a vehicle that has been stopped for a traffic violation.") (emphasis in original). It wasn't until our decision in *Commonwealth v. Brown,* 439 Pa.Super. 516, 654 A.2d 1096 (1995), that this Court departed from previously established case law and concluded that *Mimms II* permits an officer to order a passenger to exit a lawfully stopped vehicle as a matter of right. *See* 654 A.2d at 1101. *Brown's* holding, however, was confined to the Fourth Amendment and does not represent the fullest extent of the protections available under Article I, Section 8. *See id.* at 1099 (refusing to address the appellant's claim under Article I, Section 8 and stating that the decision and analysis "focuses solely on the federal constitution and ... reflects only Fourth Amendment law.").

¶ 7 My reading of our Supreme Court's decisions in *Pollard* and *Mimms I* (to the limited extent that it echoes *Pollard* ) and this Court's decision in *Baer* and *Robinson* leads me to conclude that they "suggest a distinct standard" should be applied to Article I, Section 8 when analyzing an officer's command to a passenger to exit a vehicle. *See Commonwealth v. Glass,* 562 Pa. 187, 754 A.2d 655, 660 (2000). The fact that these cases were either decided on Fourth Amendment principles or involved claims under both the Fourth Amendment and Article I, Section 8 is of no significance when analyzing the protections afforded under our state constitutional provision. In *Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769 (1996), our Supreme Court stated:

> We do not find that because these cases were decided to some degree by reliance upon the federal Fourth Amendment that they are not representative of the law of this Commonwealth pertaining to Article I, Section 8. At best, nothing can be discerned from the Court's failure to note specifically that Pennsylvania Constitutional rights were also being considered. The federal constitution provides a minimum of rights below which the states cannot go. Where our Court ... finds that the police violated the defendant's federal constitutional rights, there is no reason for the Court to go further and address what additional protections the Pennsylvania Constitution might also provide.

672 A.2d at 774 n. 7. Similarly, in *Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896, 902 (1995), our Supreme Court rejected subsequent federal precedent that altered its holding in *Commonwealth v. Timko,* 491 Pa. 32, 417 A.2d 620 (1980). Although *Timko* was analyzed under the Fourth Amendment, our Supreme Court departed from federal law and observed:

> It is axiomatic that [we] may provide more protection for citizens of Pennsyl-

vania under the Pennsylvania Constitution than the federal courts provide under the United States Constitution, and it is our view that the rule of *Timko* is as valid today as it was fifteen years ago when *Timko* was decided.

*White,* 669 A.2d at 902. *But see Commonwealth v. Rodriguez,* 695 A.2d 864, 870 (Pa.Super.1997) (finding the appellant's reliance on *Pollard* in an *Edmunds* claim unpersuasive because "there was no state constitutional basis presented in that case.").

¶ 8 Among state supreme/high courts, five have rejected the *Mimms II/Wilson* rationale on state constitutional grounds and concluded that an officer cannot direct the physical movement of a driver and/or passenger without articulating some degree of objective suspicion. *See State v. Sprague,* 175 Vt. 123, 824 A.2d 539, 546 (2003) (concluding that under Chapter I, Article II of the Vermont Constitution, an officer cannot order a driver out of his/her vehicle without providing "an objective circumstance that would cause a reasonable officer to believe it was necessary to protect the officer's, or another's safety or to investigate a suspected crime."); *State v. Mendez,* 137 Wash.2d 208, 970 P.2d 722, 728 (1999) ("An officer must therefore be able to articulate an objective rationale predicated specifically on safety concerns, for officers, vehicle occupants, or other citizens, for ordering a passenger to stay in the vehicle or to exit the vehicle to satisfy article I, section 7."); *Commonwealth v. Gonsalves,* 429 Mass. 658, 711 N.E.2d 108, 112 (1999) ("[W]e conclude that art. 14 requires that a police officer, in a routine traffic stop, must have a reasonable belief that the officer's safety, or the safety of others, is in danger before ordering a driver out of a motor vehicle. The fact that we do not follow *Mimms [II]* in this type of case necessarily leads to the conclusion that we shall not follow *Wilson*

either, because *Wilson* extends *Mimms [II]* in a manner incompatible with the rights guaranteed Massachusetts citizens under art. 14."); *State v. Smith,* 134 N.J. 599, 637 A.2d 158, 166 (1994) (concluding that under Article I, Paragraph 7 of the New Jersey Constitution, an officer must have "some quantum of individualized suspicion" before asking a passenger to step out of a vehicle, because the request, although not a major intrusion, is nevertheless an intrusion); *State v. Kim,* 68 Haw. 286, 711 P.2d 1291, 1294 (1985) (holding that "under article I, section 7 of the Hawaii Constitution, a police officer must have at least a reasonable basis of specific articulable facts to believe a crime has been committed to order a driver out of a car after a traffic stop."). In general, these decisions provide broader protection under the state's constitutional provision because they conclude that the officer's order to exit and/or remain in a vehicle is not a minimal intrusion upon an individual or that it constitutes a separate and distinct seizure. *See, e.g., Sprague,* 824 A.2d at 544–45 (recognizing that an order to exit one's vehicle is a "further seizure within the meaning of Article Eleven."); *Gonsalves,* 711 N.E.2d at 112 (stating that an officer's order to exit is "an intrusion into a driver or a passenger's privacy [that] is not minimal."). Accordingly, *Pollard, Baer* and *Robinson* are "consistent with the rationale of the state courts that have found broader state constitutional protections." *Matos,* 672 A.2d at 775.

¶ 9 Therefore, in light of the above-mentioned state case law and the history of this Commonwealth's case law, I believe that there is strong evidence to support a broader, privacy-based state constitutional right under Article I, Section 8—a right that departs from the reasoning of *Wilson* and requires that an officer provide an objective, articulable basis to order a pas-

senger to exit from a vehicle. If such a state-created right were acknowledged in this Commonwealth, it would explicitly reject the rationale of *Wilson* and would naturally decline to extend that case's doctrine to allow an officer to command a passenger to re-enter and remain inside a vehicle throughout the duration of the stop without articulating some degree of suspicion. *See Mendez,* 970 P.2d at 730 ("We . . . hold the officers did not meet the objective rationale test under article I, section 7 . . . that would allow them to order Mendez back into the vehicle."). *See also Brendlin v. California,* — U.S. —, 127 S.Ct. 2400, 2408 n. 5, 168 L.Ed.2d 132 (2007) (citing *Mendez* and acknowledging that the Supreme Court of Washington does not consider a passenger to be seized when he/she is stopped as a result of a routine traffic violation). For this reason, I decline to join the portion of the Majority's Opinion that concludes Pratt's rights under Article I, Section 8 do not exceed those guaranteed by the Fourth Amendment. *See* Majority Opinion at 13.

¶ 10 While I conclude that the strong notion of privacy embodied in Article I, Section 8 is implicated in this case, I realize that in *Rodriguez,* a panel of this Court seemingly abrogated *Pollard* and concluded that the Pennsylvania Constitution does not provide greater protection for passengers than *Wilson. See Rodriguez,* 695 A.2d at 870. Particularly, the *Rodriguez* panel rejected as "meritless" the appellant's reliance on *Pollard* because "there was no state constitutional basis presented" in the case and its conclusion "was entirely the result of an application of Fourth Amendment principles as they had been developed to that date." *Rodriguez,* 695 A.2d at 870. Although I find that the *Rodriguez* panel disregarded the mandates of *Matos, supra* and *White, supra,* in determining that *Pollard* is "unpersuasive" on the ground that it involved a Fourth

Amendment claim, we are nevertheless bound by that decision. Consequently, without having the authority of *Pollard* to support a state constitutional claim, I have no choice but to agree with the Majority that the *Mimms II/Wilson* rationale can also be extended under Article I, Section 8 to allow a police officer to instruct a passenger to re-enter or remain in a vehicle following a lawful traffic stop. Majority Opinion at 567.

¶ 11 After study, it appears that our Supreme Court never overruled its decision in *Pollard,* and thus, that case remains "good law" in this Commonwealth. It further appears that our Supreme Court has neither adopted *Wilson* as a matter of state constitutional law nor determined whether *Wilson* frustrates the enhanced notions of privacy inherent in Article I, Section 8. Therefore, I respectfully urge our most Honorable Supreme Court to address and resolve these conflicting issues if and when they are properly presented. Accordingly, I concur in the result reached by the Majority, but write separately to express my concerns that the rule of law we announce today could possibly undermine the greater protections of privacy embodied in Article I, Section 8.