J-S69013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSE RIGOBERTO GARCIA-QUINTERO | |
| Appellant | No. 326 MDA 2016 |

Appeal from the Judgment of Sentence Entered October 28, 2013
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0001712-2012

BEFORE:  STABILE, DUBOW, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED NOVEMBER 22, 2016**

Appellant Jose Rigoberto Garcia-Quintero appeals from the October 28, 2013 judgment of sentence entered in the Court of Common Pleas of York County ("trial court"), following a jury trial that resulted in him being convicted of persons not to possess firearms and firearms not to be carried without a license.[1]  Upon review, we affirm.

The facts and procedural history underlying this case are undisputed. As summarized by the trial court:

> On the evening of December 24, 2011, Officer Kelly Brubaker of the Hanover Borough Police Department initiated a traffic stop of a Dodge Durango traveling without its headlights on.  Officer Brubaker approached the vehicle and observed two

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105(a)(1), and 6106(a)(1), respectively.

passengers inside. Jesus Beltran-Leon was driving. [Appellant] appeared to be passed out in the passenger seat.

Soon after the stop began, Sergeant Jason Byers of the Hanover Borough Police Department arrived on the scene. Despite smelling an odor of an alcoholic beverage coming from Mr. Beltran-Leon, Sergeant Byers and Officer Brubaker decided that they did not have enough evidence to arrest him for driving under the influence, due, in part, to a language barrier between them. Instead, the officers agreed to permit the men to go home. Appellant's behavior indicated to Sergeant Byers that he was most likely intoxicated and incapable of safely driving. The officers then gave the men the opportunity to call a friend for a sober ride, but they were unable to reach anyone. As a result, the officers decided to give the two men a ride in a police cruiser to a safe location.

[]Appellant was extremely disoriented, to the point that Sergeant Byers had to physically assist him out of the vehicle. After Sergeant Byers placed []Appellant in the back of the police car with Mr. Beltran-Leon, he returned to the passenger side of Mr. Beltran-Leon's car to close the door. As [Sergeant Byers] closed it, he looked in and observed, in plain view, a handgun sitting against the transmission hump below the center console in the passenger compartment. After a records search revealed that neither man possessed a license to carry a firearm, both were placed under arrest.

[On May 21, 2012, Appellant filed an omnibus pretrial motion to suppress evidence, arguing that the officers lacked reasonable suspicion to detain him. Following a hearing, on January 15, 2013, the trial court denied Appellant's motion to suppress.] A jury trial was held on September 11-13, 2013[,] and the jury found []Appellant guilty of [c]ount I, [p]ersons not to [p]ossess [f]irearm . . . and [c]ount II, [f]irearm [n]ot to [b]e [c]arried [w]ithout a [l]icense. [On October 28, 2013, the trial court] sentenced Appellant to four to eight years of incarceration on [c]ount I, and three to six years of incarceration on [c]ount II, to run concurrently.

[]Appellant filed a post-sentence motion on December 13, 2013 and raised three issues: insufficient evidence, weight of the evidence, and a pretrial suppression issue. . . . The trial court denied [Appellant's] post-sentence motion on May 22, 2014.

Trial Court Opinion, 8/22/14, at 1-3 (record citations omitted). On June 23, 2014, Appellant appealed to this Court. On June 24, 2015, a panel of this Court quashed the appeal. *Commonwealth v. Garcia-Quintero*, 22 A.3d 1143 (Pa. Super. 2015) (unpublished memorandum). This Court concluded

that Appellant did not file timely post-sentence motions and that his notice of appeal to this Court from the denial of the untimely post-sentence motion was also untimely. *See Garcia-Quintero*, No. 1080 MDA 2014, at 5.

On October 15, 2015, Appellant *pro se* filed a petition under the Post Conviction Relief Act (the "Act"), 42 Pa.C.S.A. §§ 9541-46. The PCRA court appointed counsel, who then filed an amended PCRA petition, alleging that Appellant's trial counsel was ineffective for failing "to file timely notice of appeal."[2] Amended PCRA Petition, 1/7/16, at ¶ 10. Appellant sought the reinstatement of his direct appeal rights *nunc pro tunc*. On February 3, 2016, the PCRA court held a hearing, following which the court granted Appellant PCRA relief and reinstated his direct appeal rights *nunc pro tunc*.

On February 23, 2016, Appellant timely appealed to this Court. At the behest of the trial court, Appellant filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, raising three assertions of error:

I. Whether the [trial] court erred in denying Appellant's pretrial motion to suppress evidence where police subjected Appellant to an investigative detention without reasonable suspicion that a crime had been commited [sic]?

II. Whether insufficient evidence was presented at trial to convict Appellant of prohibited possession of a firearm and carrying a firearm without a license?

III. Whether the verdicts of guilty of prohibited posession [sic] of a firearm and carrying a firearm without a license were against the weight of the eveidence [sic] presented at trial?

---

[2] Appellant's PCRA counsel did not request *nunc pro tunc* reinstatement of his right to file post-sentence motions.

Rule 1925(b) Statement, 3/10/16 (unnecessary capitalization omitted).  The

trial court issued a Pa.R.A.P. 1925(a) opinion, addressing Appellant's

assertions of error and concluding that he was not entitled to relief.

On appeal, Appellant repeats the same three issues for our review,

which we shall address *seriatim*.

In reviewing appeals from an order denying suppression,[3] our standard

of review is limited to determining

> whether [the trial court's] factual findings are supported by the
> record and whether [its] legal conclusions drawn from those
> facts are correct.  When reviewing the rulings of a [trial] court,
> the appellate court considers only the evidence of the
> prosecution and so much of the evidence for the defense as
> remains uncontradicted when read in the context of the record
> as a whole.  When the record supports the findings of the [trial]
> court, we are bound by those facts and may reverse only if the
> legal conclusions drawn therefrom are in error.

***Commonwealth v. Griffin***, 116 A.3d 1139, 1142 (Pa. Super. 2015).

Article I, Section 8 of the Pennsylvania Constitution and the Fourth

Amendment to the United States Constitution protect the people from

unreasonable searches and seizures.  ***Commonwealth v. Lyles***, 97 A.3d

298, 302 (Pa. 2014) (citation omitted).  The ***Lyles*** Court explained:

---

[3] We note that the holding in ***In the interest of L.J.***, 79 A.3d 1073 (Pa. 2013), that after October 30, 2013, the scope of review for a suppression issue is limited to the record available to the suppression court.  ***See id.*** at 1088-89 (explaining that holding applies to "all litigation commenced Commonwealth-wide after the filing of this decision").  Because the instant criminal complaint was filed prior to October 30, 2013, ***In re L.J.*** does not apply.

Jurisprudence arising under both charters has led to the development of three categories of interactions between citizens and police. The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop and respond. The second, an "investigatory detention," permits the temporary detention of an individual if supported by reasonable suspicion. The third is an arrest or custodial detention, which must be supported by probable cause.

In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances. . . . The totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority. Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred—to guide the inquiry, the United States Supreme Court and [our Supreme] Court have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter. What constitutes a restraint on liberty prompting a person to conclude that he is not free to leave will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.

[Our Supreme] Court and the United States Supreme Court have repeatedly held a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification. Officers may request identification or question an individual so long as the officers do not convey a message that compliance with their requests is required. Although police may request a person's identification, such individual still maintains the right to ignore the police and go about his business.

*Id.* at 302-03 (internal citations and quotation marks omitted). "We adhere to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards." **United States v. Mendenhall**, 446 U.S. 544, 553 (1980).

We first address Appellant's claim that he was detained unlawfully, *i.e.*, without reasonable suspicion, when Sergeant Byers escorted him from the passenger seat and placed him in the back of a police cruiser to give him

- 5 -

a ride to a safe location. As a result, Appellant argues that the trial court erred in denying his suppression motion.

Instantly, it is beyond peradventure that Officer Brubaker seized Appellant's co-defendant and Appellant when she initiated the traffic stop. As recounted earlier, Officer Brubaker observed a vehicle traveling without headlights at 11:00 p.m. in violation of Section 4302 of the Motor Vehicle Code, 75 Pa.C.S.A. § 4302. Officer Brubaker thus had probable cause to initiate a traffic stop. *See Commonwealth v. Salter*, 121 A.3d 987 (Pa. Super. 2015) (concluding that the officer had probable cause to stop a motorist at night because of an unlit license plate). The parties do not dispute that. Thereafter, Officer Brubaker smelled an odor of alcohol emanating from Appellant's co-defendant, the driver of the vehicle.[4] "Appellant appeared to be passed out in the passenger seat. There was also an open alcoholic beverage in the vehicle." Trial court Opinion, 4/15/16, at 5. Officer Brubaker then attempted to administer a field sobriety test on the co-defendant, which she abandoned upon the realization that "there was a language barrier as the [c]o-defendant could not understand what she was

_____

[4] Under our law, drivers and passengers of a vehicle are not treated much differently from one another in the context of a traffic stop to the extent police officers have the right to order both to alight from the vehicle. *Maryland v. Wilson*, 519 U.S. 408, 410 (1997); *see Commonwealth v. Pratt*, 930 A.2d 561, 564 (Pa. Super. 2007) (noting that "following a lawful traffic stop, an officer may order both the driver and passengers of a vehicle to exit the vehicle until the traffic stop is completed, even absent a reasonable suspicion that criminal activity is afoot.").

- 6 -

instructing him to do."[5] Trial Court Opinion, 1/15/13, at 5. Officer Brubaker then administered a preliminary breath test (PBT), which registered .158% blood alcohol content. *Id.*; N.T. Suppression, 6/25/12, at 12. Officer Brubaker and Sergeant Byers ultimately decided "that they did not have enough evidence to arrest [the co-defendant] for driving under the influence, due, in part, to a language barrier between them." Trial Court Opinion, 8/22/14, at 2. "The officers agreed to permit the men to go home." *Id.* Although a decision was made not to arrest, the officers determined that, under the circumstances, the co-defendant's level of intoxication rendered him incapable of driving his vehicle safely.[6] *Id.* The officers asked the men to call a friend for a sober ride. *Id.* They were unsuccessful. *Id.* The officers then decided to give the men a ride to a safe location in a police cruiser. *Id.* Because Appellant was "heavily intoxicated" and extremely disoriented, Sergeant Byers had to assist him out of the front passenger seat. *Id.*, *see* Appellant's Brief at 11 ("Here, Appellant was heavily intoxicated and asleep or passed out, due to his intoxicated state[.]"). Appellant was seated in the back of a police cruiser. *Id.*

_____

[5] We note that Appellant and his co-defendant are Spanish speakers.

[6] Consistent with our decision in *Salter*, we conclude that Officer Brubaker possessed at least reasonable suspicion, if not probable cause, that Appellant's co-defendant was driving under the influence given her observations. *See Salter*, 121 A.3d at 995 (probable cause for DUI arrest existed with an odor of alcohol, glassy eyes, appellee's admission that she had two glasses of wine, and poor performance on field sobriety tests). In any event, the parties do not dispute that the stop for DUI was lawful.

With these facts in mind, Appellant now argues that he was unlawfully detained when the police agreed to give him a ride to a safe location after determining that the men were incapable of travelling safely on their own. We disagree. As illustrated above, once the police decided not to arrest the co-defendant for DUI and allowed the men to call a friend for a ride, the stop was over.[7] *See Commonwealth v. Reppert*, 814 A.2d 1196, 1203 (Pa. Super. 2002) (a motorist is free to leave once the police have effectuated the purpose of their stop). Our review of the record reveals that the police did not arrest the co-defendant for DUI, even though the officers testified that they deemed the co-defendant to be intoxicated and incapable of operating his vehicle safely. Similarly, based on the record before and as acknowledged by Appellant in his brief, Appellant too was "heavily intoxicated" and therefore, not in a position to operate the vehicle. Appellant's Brief at 11. Thus, the police officers merely were ensuring that Appellant and co-defendant reached a safe destination without causing any harm to themselves or others. In *Commonwealth v. Rehmeyer*, 502 A.2d 1332, 1338 (Pa. Super. 1985), we reversed the suppression court noting

> [t]he officer in this case acted swiftly, justly, and with compassion. [The officer's] offer to transport appellee to his home was a truly laudable act. It served to shield appellee from criminal punishment and prevent harm to innocent parties. Such competent and effective police work should be praised and

---

[7] Although not relevant to the case *sub judice*, it is unclear from the record whether the police issued a citation to the co-defendant for operating the vehicle without headlights at 11:00 p.m.

supported by the courts and not discouraged through dissection and reversal.

*Rehmeyer*, 502 A.2d at 1335 (citation and quotation marks omitted). Given the circumstances of this case, we conclude that the officers' conduct was not unlawful insofar as they acted to ensure the safety of Appellant, his co-defendant and others. Additionally, the officers' objective here was not the prosecution of a crime. *Rehmeyer*, *supra*, at 1338. As the trial court observed, "Appellant and [co-defendant] were placed together in a police cruiser, unsecured." Trial Court Opinion, 4/15/16, at 5. Accordingly, the trial court did not err in denying Appellant's suppression motion.

We now turn to Appellant's argument that the evidence was insufficient to sustain his convictions for persons not to possess firearms and firearms not to be carried without a license. Appellant's Brief at 14. In support of his sufficiency argument, Appellant points out only that the Commonwealth failed to meet the element of constructive possession.[8]

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and

_____

[8] Appellant stipulated at trial that he was a person not possess a firearm on account of prior criminal convictions "for at least 60 days prior to the date of this incident." N.T. Trial, 9/11/13, at 96.

circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa. Super. 2014),

***appeal denied***, 95 A.3d 275 (Pa. 2014).

Section 6105 of the Crimes Code, relating to persons not to possess,

provides in part:

A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. 6105(a)(1).[9] Section 6106 of the Crimes Code, relating to

firearms not be carried without a license, provides in part:

Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1).

_____

[9] "Mere possession, along with the prior criminal conviction, establishes the elements of this crime." ***Commonwealth v. Moore***, 49 A.3d 896, 903 (Pa. Super. 2012).

Possession of an object may be proven by circumstantial evidence. *See Commonwealth v. Harvard*, 64 A.3d 690, 699 (Pa. Super. 2013) (noting that "circumstantial evidence may be used to establish a defendant's possession of . . . contraband"), *appeal denied*, 77 A.3d 636 (Pa. 2013). Possession of a weapon can be found by proving actual possession, constructive possession, or joint constructive possession. *See Commonwealth v. Heidler*, 741 A.2d 213, 215 (Pa. Super. 1999), *appeal denied*, 758 A.2d 660 (Pa. 2000). Constructive possession is found where the defendant does not have actual possession over the weapon but has a conscious dominion over it. *See id.* at 216. "In order to prove that a defendant had constructive possession of a prohibited item, the Commonwealth must establish that the defendant had both the ability to consciously exercise control over it as well as the intent to exercise such control." *Commonwealth v. Gutierrez*, 969 A.2d 584, 590 (Pa. Super. 2009), *appeal denied*, 983 A.2d 726 (Pa. 2009); *accord Commonwealth v. Magwood*, 538 A.2d 908, 909-10 (Pa. Super. 1988), *appeal denied*, 546 A.2d 57 (Pa. 1988). The requirements needed to satisfy constructive possession may be inferred from the totality of the circumstances. *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996), *appeal denied*, 692 A.2d 563 (Pa. 1997). The fact that the contraband is located in an area usually accessible only to the defendant may lead to an inference that he placed it there or knew of its presence. *See id.* Furthermore, the

fact that another person might have equal access and control to an object does not eliminate the defendant's constructive possession. ***See id.***

Here, the evidence presented at trial, viewed in a light most favorable to the Commonwealth, establishes the Commonwealth proved the necessary element of constructive possession. Thus, we agree with the trial court's conclusion that Appellant's convictions for firearms violation were supported by sufficient evidence. As the trial court found, "[t]he gun was lying on the passenger-side floor against the center console, inches away from where []Appellant was seated." Trial Court Opinion, 4/15/16, at 7. The trial court further found:

> Appellant was riding in the passenger seat of [the] vehicle at arm's length from an operational firearm. There was also a pouch of ammunition on the passenger side floor. Appellant rode in the vehicle twice on the night the vehicle was pulled over. Although Appellant denied knowledge of the firearm, Sergeant Byers testified that it was in plain view when he looked [inside the vehicle] while closing the passenger[-]side door after Appellant exited. Further, Officer Brubaker testified that . . . [the co-defendant] stated that the gun belonged to Appellant.

***Id.*** Accordingly, Appellant is not entitled to relief on his sufficiency challenge with respect to the firearms convictions under Sections 6105 and 6106 of the Crimes Code.

Appellant lastly argues that his firearms convictions were against the weight of the evidence. We, however, need not address the merits of this issue as Appellant failed to preserve it for our review. Specifically, our review of the record indicates that Appellant failed to raise the issue before the trial court. "A weight of the evidence claim must be preserved either in

- 12 -

a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." **Commonwealth v. Griffin**, 65 A.3d 932, 938 (Pa. Super. 2013) (citing Pa.R.Crim.P. 607) (other citations omitted). As Appellant did not raise this claim at sentencing or preserve it through a timely filed post-sentence motion,[10] the issue is waived on appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/22/2016

---

[10] As noted, Appellant here did file a post-sentence motion, which we rejected as untimely on his previous appeal. **See Garcia-Quintero**, No. 1080 MDA 2014, at 5; **see also Commonwealth v. Wrecks**, 931 A.2d 717, 719 (Pa. Super. 2007) (observing that "[a]n untimely post-sentence motion does not preserve issues for appeal.") (citation omitted); **Commonwealth v. Bilger**, 803 A.2d 199, 202 (Pa.Super. 2002), **appeal denied**, 813 A.2d 835 (Pa. 2002) (recognizing that post-sentence motion filed more than ten days after sentence imposed is legal nullity).