**Commonwealth v. Mickel**

C.P. of Mercer County, no. 601 Criminal 2010.

*Ryan Bonner, assistant district attorney*, for Commonwealth.

*Lyle L. Dresbold*, for defendant.

ST. JOHN, *J.*, November 9, 2010—

*Syllabus*

Traffic Stops – Seizure of a Passenger

The U.S. Supreme Court has held that the Fourth Amendment of the U.S. Constitution provides that any passenger in a private motor vehicle that has been stopped by the police is "seized" for the purposes of the Fourth Amendment and therefore has the automatic right to challenge the legality of the motor vehicle stop. As a result of the Supreme Court's holding the U.S. Constitution is now more protective of individual rights than Article 1, Section 8 of the Pennsylvania Constitution and therefore overrides the Pennsylvania Constitution, which requires a passenger to prove standing to challenge a stop.

## MEMORANDUM OPINION

It is axiomatic that the Supreme Court of Pennsylvania may provide more protection for the citizens of Pennsylvania under the Pennsylvania Constitution than the federal courts provide under the United States Constitution.[1] Historically, Pennsylvania courts have provided more protections for citizens than the federal courts. That trend has now been reversed in a narrow context. This case illustrates the newly developed dichotomy between the application of the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution as it applies to passengers in private motor vehicles. Since 2007, passengers can challenge the stop

---

1. See *Com. v. White,* 669 A.2d 896, 902 (Pa. 1995); *Com. v. Pratt,* 930 A.2d 561, 571-572 (Pa.Super. 2007) (Johnson, J., concurring).

of a private motor vehicle under the Fourth Amendment simply because of their status as a passenger, without overcoming the additional hurdle of proving standing. Under the Pennsylvania Constitution, however, a passenger while deemed to be "seized" still has the burden of establishing standing before challenging a stop. Thus, the Fourth Amendment now extends greater protections in this situation than its Pennsylvania counterpart.[2] Notably, no appellate court in Pennsylvania has recognized or addressed this development.[3]

Defendant filed a pre-trial omnibus motion for relief to suppress the gun seized from a private vehicle in which he was riding, and to suppress statements he and the driver gave to police at the scene and later at a police station.[4] Defendant was a front-seat passenger in a motor vehicle that was stopped for speeding on State Route 58 in Jefferson Township, Mercer County, Pa. After police completed their investigation of the traffic stop, the driver was given a warning and was told he was free to leave. The officer walked away from the stopped vehicle a short distance, paused, then returned to the driver's window and

---

2. The U.S. Constitution acts as a floor, not a ceiling, with each state having the ability to set broader standards than the federal constitution. See *Jubelirer v. Rendell*, 953 A.2d 514 (Pa. 2008). Currently, the Fourth Amendment of the U.S. Constitution affords more protections than Article 1, Section 8 of the Pennsylvania Constitution; therefore, the U.S. constitution overrides the Pennsylvania Constitution in this limited context.

3. In his concurring opinion in *Pratt*, Judge Johnson, notes the United States Supreme Court decision in *Brandlin v. California*, 551 U.S. 249 (2007), on the point that the Supreme Court of Washington does not consider a passenger to be seized when he/she is stopped as a result of a routine traffic violation. *Com. v. Pratt*, 930 A.2d at 573.

4. The Findings of Fact were issued following the suppression hearing on October 7, 2010.

asked the driver if he minded answering some questions. The driver agreed and then denied that any guns or contraband were in the car. The driver then consented to a search of his SUV even though he was advised that he could refuse.

The three adults were told to exit the vehicle and one policeman began his search in the front passenger area where the defendant was sitting.[5] The officer found a box of ammunition in a McDonald's bag, then went to the rear of the vehicle, told the occupants what he found, and patted each down for a weapon. None of the occupants had a weapon, so he returned to the front passenger area and located a loaded 9mm Ruger handgun under the floor mat. All three occupants were then handcuffed.

The driver was advised of his *Miranda* warnings and eagerly waived his rights and told the police the gun was the defendant's. The defendant, who was now in a separate cruiser, was then Mirandized and he too was eager to talk to police. He admitted possessing the gun without a license but wanted to work as a confidential informant to get out of trouble. Defendant now seeks to get out of trouble by challenging the seizure of his person, as well as the fruits of the subsequent search and his confession. Defendant also claims that he asserted his rights by asking to speak to an attorney but questioning continued nonetheless without being given that opportunity.

Defendant does not challenge the legality of the initial

---

5. The defendant was recently prosecuted by this policeman who attended the sentence hearing a few months earlier for burglary, and who recognized the defendant during the stop.

traffic stop or the validity of the driver's consent to search the SUV. Instead, defendant asserts that he was seized de-facto and without justification when the police began the second encounter with the driver to answer questions and consent to a search. Defendant argues that he had no other realistic options but to remain at the scene while his ride was subjected to the second encounter. Defendant contends that the holding in a recent U.S. Supreme Court case should be extended to require the police to have reasonable suspicion or probable cause in these situations since the passenger in defendant's opinion is by law "seized." Defendant's motion is based upon both the federal and state constitutions.

## I. Fourth Amendment Argument

The defendant correctly points out that the United States Supreme Court recently declared that any passenger in a private motor vehicle that has been stopped by the police is "seized" for the purposes of the Fourth Amendment and therefore has the right to challenge the legality of the motor vehicle stop. *Brendlin v. California*, 551 U.S. 249 (2007).[6]

---

6. The declaration by the *Brendlin* court that all passengers are "seized" during a traffic stop is a major development in Fourth Amendment jurisprudence. 551 U.S. at 255; accord, *Arizona v. Johnson*, 555 U.S. 323, 129 S.Ct. 781, 784 (2009). Prior to *Brendlin*, passengers needed to establish standing before they could challenge the initial stop. Now, passengers have the right to challenge a traffic stop under the Fourth Amendment simply because they were in the vehicle. Thus, under federal law passengers have derivative standing to assert vicariously the driver's constitutional rights. Interestingly, no Pennsylvania appellate courts have even cited the *Brendlin* decision, let alone discussed its holding, even though *Brendlin* was decided more than three years ago. In fact, a recent panel decision regarding the right of a passenger to challenge the search of a trunk pursuant to the alleged consent by the driver, opined that "under both our state and the federal constitutions, 'a defendant cannot prevail upon a suppression motion unless he demonstrates that the

While Pennsylvania courts have long deemed occupants of motor vehicles as seized under the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution, they have still required occupants to demonstrate standing under both constitutions. See, e.g., *Com. v. Blouse*, 531 Pa. 167, 611 A.2d 1177; *Com v. Swanger*, 453 Pa. 107, 307 A.2d 875; *Com v. Campbell*, 862 A.2d 659 (Pa. Super. 2004); and *Com. v. Powell*, 994 A.2d 1096, 1108. However, the defendant in the case at bar has stipulated that the initial stop was proper. Instead, defendant argues that since the initial traffic stop was concluded a second "seizure" of everyone occurred when the police returned to the driver and began another encounter, which required an independent basis. The commonwealth argues that defendant was not seized because this was a mere encounter.

Interestingly, the defendant does not challenge the driver's consent to the search, nor to the driver answering the officer's questions. Instead, defendant's argument is that this second encounter between the police and the driver is a vicarious "seizure" of the defendant even though he was a passenger. It is this second alleged seizure that the

challenged police conduct violated *his own, personal privacy interests.*' *Millner*, 888 A.2d 692 (emphasis added)" *Com. v. Powell*, 994 A2d 1096, 1108 (PaSuper. 2010). The *Powell* court upheld the driver's suppression motion because his alleged consent was defective, but reversed the suppression of the evidence seized as to the passenger because he was unable to prove standing to challenge the search of the trunk since he had no privacy interest in the trunk.

Standing in the case at bar is not an issue since the item seized was in the area in which defendant was seated and he was charged with a possessory offense. See, *Com. v. Powell*, 994 A.2d 1096, 1108 for a discussion of the test for standing that still applies to challenges under Article I, Section 8 of the Pennsylvania Constitution.

defendant challenges as constitutionally defective since it was not based upon reasonable suspicion and/or probable cause. While the commonwealth agrees that this second encounter was not based upon reasonable suspicion or probable cause, the government maintains that the defendant was not seized because this was a mere encounter between the police and the driver being conducted with the driver's consent. Accordingly, the government argues that it does not need reasonable suspicion or probable cause, since it was not needed for the driver who was not "seized."

Defendant claims that it is a logical extension of *Brendlin* to hold that this second encounter arises to the level of a seizure for Fourth Amendment purposes. The defendant's reading of *Brendlin* is overly broad, however. This second interaction with the driver was a constitutionally permissible encounter since it was with the consent of the driver at all times. Hence, the driver was not "seized," as in the initial traffic stop, so defendant as a passenger cannot realistically believe that he was seized either. Notably, it is uncontested that the driver was told that he was free to leave and that he did not have to consent to a search or to answer questions. Nonetheless, the driver elected voluntarily to continue with this police encounter. Accordingly, the government did not need either reasonable suspicion or probable cause for the vicarious detention of the occupants of the vehicle while a search, consented to by the driver, was conducted.

## II. Pennsylvania Constitutional Analysis

Pennsylvania jurisprudence recognizes three levels of interaction between police and citizens:

> (1) mere encounter, (2) investigative detention and (3) custodial detention. *Com. v. Jones*, 874 A.2d 108, 116 (Pa. Super. 2005). The mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond. In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest. *Id.* (citation omitted).

In these matters our initial inquiry focuses on whether the individual in question has been legally seized. To guide the crucial inquiry as to whether or not a seizure has been effected the United States Supreme Court has devised an objective test entailing a determination of whether, in the view of all surrounding circumstances, a reasonable person would believe that he was free to leave. In evaluating the circumstances, the focus is

directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained, in making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred. *Com. v. Strickler*, 563 Pa. 47, 58-59, 757 A.2d 884, 889-90 (2000) (citations omitted)." *Com. v. Krisko*, 884 A.2d 296, 299 (Pa. Super. 2005).

Here, defendant does not contend that the break between the traffic stop and the second interaction with the driver was insufficient. Moreover, the driver was told that he was free to leave while he was in his SUV that had its engine running throughout the traffic stop when he was asked if he would answer some questions and consent to a vehicle search. There is also no evidence of any coercive conditions or police excesses that would elevate the interaction between the police and the driver to an arrest or investigative detention prior to the actual arrest of the defendant when the gun was found.

Moreover, in pre-*Brendlin* cases, the Pennsylvania Supreme Court has held that consent searches following legitimate traffic stops are not a "second or subsequent seizure under the Fourth Amendment." *Com. v. Stickler*, 563 Pa. 47, 78, 757 A.2d 884, 901. The court in *Strickler* did not conduct a separate analysis under article I, section 8 since there was "nothing that would distinguish the pertinent protections available under the Pennsylvania Constitution from those available under the Fourth Amendment." *Id.* at 80, 757 A.2d at 902. Thus, the only

relevant inquiry, if the interaction was simply a mere encounter, is whether consent by the driver was valid, which is not contested here. Notably, the Superior Court continues to follow *Strickler* and its progeny without recognizing *Brendlin*.

The *Brendlin* court's declaration that passengers are "seized" during traffic stops is in effect a rule of standing designed to combat police excesses and protect citizens' rights. This declaration was based on the fact that the passenger was also de-facto "seized" by the traffic stop. Perhaps the result in *Powell* is illustrative of the odd outcome that cries out for justice, and troubled the U.S. Supreme Court, where prior standards failed to protect the Fourth Amendment rights of passengers. *Powell*, 994 A.2d 1096 (Pa. Super. 2010).

Moreover, the import of *Brendlin* is that passengers of private vehicles stand in the shoes of the driver. So if the driver was stopped illegally in the first instance, then passengers can assert the rights of the driver and suppress evidence without proving standing, unless there is another basis to uphold a subsequent search or questioning. Similarly, on the second interaction with police after the conclusion of the traffic stop, it follows from *Brendlin* that passengers still stand in the shoes of the driver to challenge the legality of this second interaction under the Fourth Amendment without proving standing. Any subsequent search passes constitutional muster in this case, in the absence of probable cause or reasonable suspicion, if the driver was only subjected to a mere encounter and consented to the search, which is

not tantamount to a "seizure."

Under *Brendlin*, police still do not need any other basis distinct from the nature of the driver's interaction upon which a passenger can mount a constitutional challenge under this fact pattern because the U.S. Supreme Court also recognizes and approves of police – citizen encounters without reasonable suspicion and/or probable cause. *U.S. v. Drayton*, 536 U.S. 194 (2002); *Florida v. Royer*, 460 U.S. 491 (1983); *U.S. v. Mendenhall*, 446 U.S. 544 (1980); *Terry v. Ohio*, 392 U.S. 1, 34 (1968) (White, J., concurring) (noting nothing in the constitution prevents policemen from addressing questions to anyone on the streets). The U.S. Supreme Court does not refer to these interactions as "mere encounters" however. Instead, it uses the term "consensual encounter." See *Drayton*, 536 U.S. at 201; *Florida v. Bostick*, 501 U.S. 429, 429 (1991); *California v. Hodari D.*, 499 U.S. 621 (1991); *Florida v. Royer*, 460 U.S. at 506. Therefore, defendant's omnibus motion must fail under both Pennsylvania law and federal law since the driver was not "seized" during the second interaction with police.

## III. Suppression of Statements

Similarly, defendant's request to suppress his statements under this same argument is equally flawed. Therefore, since the interaction with the driver was not unconstitutional, Defendant's statements to the police at the scene and later at the police station will not be suppressed based upon the *Brendlin* argument.

Defendant argues alternatively, that his statements

should be suppressed because his *Miranda* rights were violated when he allegedly asked to speak to a lawyer at the scene. The record clearly establishes that defendant was given his *Miranda* rights and waived those rights and eagerly spoke with police. Moreover, the credible evidence at the omnibus hearings supports the finding that the defendant did *not* ask for an attorney. Thus, his second challenge to his inculpatory statements will be also denied.

Finally, defendant challenges the statements made by the driver of the vehicle after the gun was discovered. The driver was given his *Miranda* warnings, clearly waived those rights, and quickly blamed the defendant. Defendant's legal basis for this challenge is unclear. The *Brendlin* theory applies to passengers and is inapplicable to statements by third parties, and the Pennsylvania Supreme Court upheld such police-driver interactions after traffic stops are concluded, if they are mere encounters and the consent is voluntary. The purpose of *Miranda* is to protect individuals from self incrimination and is not meant to protect individuals from the voluntary statements of another party. See *United States v. Patane*, 542 U.S. 630 (2004). Thus, defendant's challenge to a third party's statement is without merit assuming arguendo that defendant even has the right to make that challenge.

Hence, this order:

## ORDER

And now, on this November 9, 2010, the defendant's Omnibus Pretrial Motion is denied.